# EXHIBIT 7

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ATMEL CORPORATION, A DELAWARE
CORPORATION; ATMEL
SWITZERLAND, A CORPORATION;
ATMEL FRANCE, A CORPORATION;
AND ATMEL SARL, A CORPORATION,
         Plaintiffs,

                     Case No. C 06-02138 CW
   vs.

AUTHENTEC, INC.,
         Defendant.
_____/

---o0o---

VIDEOTAPED DEPOSITION OF

ANIL JAIN, PH.D.

Monday, January 14, 2008

---o0o---

BIENENSTOCK COURT REPORTING & VIDEO
REPORTING FOR:
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California  94105
Phone: (415) 321-2311
Fax: (415) 321-2301

Reported by:
LEISA M. PASTOR, CSR, RPR, CRR
CSR No. 3500

Page 8

1   late of last week.  In fact, as of Friday, I didn't
2   even know whether the deposition would be held today
3   or it would be held in the first week of February, so
4   the date of the deposition was not decided as far as I
5   know until this last Friday, two days ago, three days
6   ago.
7  Q.  When were you asked by Atmel to form opinions on claim
8      construction?
9  A.  On Friday, when I met with the Atmel attorneys in East
10     Lansing on Friday and Saturday.
11 Q.  So that's the first time that you were asked to form a
12     claim construction --
13 A.  Yes.
14 Q.  -- opinion?
15 A.  Yes.
16 Q.  Okay.  So is it accurate that as of May of last year,
17     May of 2006, you had not yet formed any opinions as to
18     claim construction of the '114 or '804 patents?
19 A.  That is correct.
20 Q.  Okay.  And it's correct that up until Friday of last
21     week, January 11th, you had not formed any opinions
22     regarding claim construction of the '114 or '804
23     patents; is that correct?
24 A.  That is correct.
25 Q.  Were you consulted about claim construction of the

1      of this litigation?
2              MS. McKENZIE:  Objection, vague and
3      ambiguous as to document request.
4   A.  No, they did not ask me to produce any -- any
5      documents.
6   BY MS. DeMORY:
7   Q.  Okay.  So counsel for Atmel did not ask you to produce
8      any documents for this deposition today; is that
9      correct?
10  A.  That -- except for this report.
11  Q.  Let's go ahead and mark as Jain Exhibit Number 1, and
12     I apologize that these are not -- the court reporter's
13     going to need to mark it for you?
14  A.  Oh, sure.
15             MARKED BY THE REPORTER:
16             DEPOSITION EXHIBIT NUMBER 1
17             9:36 a.m.
18  BY MS. DeMORY:
19  Q.  So we've marked as Jain Exhibit Number 1 a letter from
20     Sidley to you dated June 8th of 2006; do you recognize
21     this letter?
22  A.  Yes.
23  Q.  Okay.  And what is this letter?
24  A.  I guess it is a letter to sort of retain my services
25     in connection with Atmel vs. Authentec litigation.

1   Q.   Okay. And if you'd turn to the last page, AJ 3, is
2        that your signature that appears on this page?
3   A.   That is correct.
4   Q.   And do you recall when you were first contacted to
5        have your services retained with regard to the Atmel
6        vs. Authentec litigation?
7   A.   I think it was just -- I don't know exactly the date,
8        but maybe it was May of 2006, counsel, Ms. McKenzie,
9        called me on the phone and discussed this and then I
10       agreed and this letter came.
11  Q.   Okay. Do you recall what was discussed in that
12       initial conversation with Ms. McKenzie?
13  A.   I think it was just that I didn't -- that she just
14       wanted to retain my services regarding this
15       litigation, and I don't remember the exact nature of
16       the -- of the conversation, and I don't remember
17       whether at that time the patent numbers were mentioned
18       or not, but she explained to me what the litigation
19       was, but I don't remember the exact discussion which
20       went on.
21  Q.   Okay. Were you aware of the Atmel patents that are at
22       issue in this litigation prior to the time of your
23       initial contact with Ms. McKenzie?
24  A.   No.
25  Q.   Now, did you know Jean-Francois Mainguet prior to the

Page 34

1        claim construction.
2   BY MS. DeMORY:
3   Q.   Okay. Have you been asked to formulate any opinions
4        in this case other than claim construction opinions?
5   A.   No.
6   Q.   Okay. Did you review the file histories of the
7        patents in suit?
8   A.   No.
9   Q.   Did you review any of the references cited in the file
10       histories of the patents in suit?
11  A.   I didn't see the file history.
12  Q.   Did you consider the Mainguet deposition transcript in
13       formulating your opinion in claim construction?
14  A.   No.
15  Q.   Have you reviewed the French patent application that
16       was filed prior to the '114 patent application?
17  A.   No.
18  Q.   Have you used or inspected any of the Atmel devices
19       alleged to embody the claims of the patents in suit in
20       conjunction with forming an opinion on claim
21       construction?
22  A.   No.
23  Q.   Have you ever used any of the accused products?
24  A.   You -- do you mean --
25  Q.   The Authentec products.

Page 61

1        fingerprint from said partial image from claim 1 of
2        the '114 patent and means for reconstituting a total
3        image of the fingerprint from said overlapping images
4        from claim 17 of the '114 patent.  Do you see that?
5   A.   Yes.
6   Q.   Okay.  The next column over is Atmel's proposed
7        construction, and for the function, Atmel's proposed
8        construction is to reconstruct or constitute again the
9        complete image of each fingerprint part that has been
10       obtained from the series of partial images.  Do you
11       see that?
12  A.   Yes.
13  Q.   Do you agree with that proposed claim construction?
14  A.   Yes.
15  Q.   In the context of the '114 and '804 patents, is it
16       your opinion that the words reconstituting and
17       reconstructing have the same meaning?
18  A.   Yes.
19  Q.   In the context of the '114 and '804 patents, is it
20       your opinion that the words total, complete and global
21       have the same meaning?
22  A.   Yes.
23  Q.   So is it correct that a total image is the same --
24       strike that.
25                 Is it correct that a total image as

1   A.   Physical effects, yes.
2   Q.   Okay.  Now, this sentence that says that the -- uses
3        the word fleeting, what's your understanding of what's
4        meant by the word fleeting here?
5   A.   I don't know the exact meaning of the word fleeting,
6        but I think here it -- my understanding in reading
7        that paragraph is that these particular effects some
8        or -- several of these physical effects must be
9        captured in -- rather quickly before the difference
10       between ridges and valleys disappear.
11  Q.   And is this a problem that the inventor of the '114
12       patent -- another problem that the inventor of the
13       '114 patent was seeking to overcome?
14            MS. McKENZIE:  Objection, vague and
15       ambiguous, calls for speculation.
16  A.   I think if you look into line 55, column 2, it talks
17       about overcoming the drawbacks of the prior art, and
18       the -- the two main drawbacks of the prior art are
19       already identified in my report, surface area is
20       large, sensor manufacturing cost is high for the
21       solid-state sensors.
22  BY MS. DeMORY:
23  Q.   So those are the two main drawbacks in your opinion as
24       identified in the specification of the '114 patent?
25  A.   For the -- for the technology available, solid-state

1            sensors available at that time.
2   Q.   So you don't believe that the fleeting problem
3        described starting at column 2 on line 24 and
4        continuing through line 40 and then starting again on
5        line 45 and continuing through 53 was a main drawback
6        that the inventor was seeking to overcome?
7                MS. McKENZIE:  Objection, vague and
8        ambiguous, calls for speculation.
9   BY MS. DeMORY:
10  Q.   You can answer the question.
11  A.   I don't know what was in the inventor's mind.
12       Inventor identified drawbacks of the technology at
13       that time and proposed an invention.
14  Q.   So how did you identify the two -- the only two that
15       you listed in your report as the main drawbacks?
16  A.   Because those were the two main drawbacks of the
17       solid-state sensing technology.  Those are broad to
18       apply to any area -- solid-state area sensors of the
19       time.
20  Q.   So that's just based on your understanding of the --
21       of the art of solid-state sensing at the time; is that
22       correct?
23  A.   That is correct.
24  Q.   And you did not include in your report as a main
25       drawback that the inventor was trying to overcome the

```
 1        effects of the disappearance of the image or this
 2        fleeting problem that's identified in column 2; is
 3        that correct?
 4   A.   If this invention also took care of that, which it
 5        probably did, which is -- that's fine, but the problem
 6        it addressed was the two major problems with the
 7        solid-state technology at that time.
 8   Q.   And what's the basis for that opinion?
 9   A.   Based on my knowledge as -- as somebody skilled in the
10        art.
11   Q.   Okay.  Now, in column 2, and just so the record is
12        clear here, in your report -- see if I can find it.
13        Okay.  So at the bottom of -- let's turn back to the
14        bottom of page 4.
15   A.   Of my report?
16   Q.   Yeah.
17   A.   Uh-huh.
18   Q.   And the last paragraph says, the knowledge of one of
19        skill in the art -- strike that.  I read that wrong.
20             The last paragraph of page 4 says, the
21        knowledge of one of skill in the pertinent art and the
22        '114 patent specification also informs and supports my
23        conclusion.  Sensors having contact-sensitive elements
24        were reasonably well-known and understood in the art
25        at the time of the invention, and what's your basis
```

1  Q.   And just so that the record's also clear, in the
2       context of the reconstruction algorithm the number of
3       partial images would be one; is that correct?
4  A.   Yes.
5  Q.   Now, we talked in column 2 about this disappearance of
6       the image or this fleeting problem that's described.
7       Do you recall generally talking about that?
8  A.   Yes.
9  Q.   Do you know if systems with excitation external to the
10      sensor as described in column 2 have this problem?
11              MS. McKENZIE:  Objection, vague and
12      ambiguous, calls for speculation.
13 A.   I'm not aware.
14 BY MS. DeMORY:
15 Q.   Now, we talked generally earlier about that the
16      contact-sensitive elements, the claim construction
17      proposed of the contact-sensitive elements -- well,
18      let me ask you this first.  We've talked a little bit
19      today about two phrases, physical parameters and
20      physical effects.  In your opinion in the context of
21      the claim construction of the '114 and '804 patents
22      are those two things the same or different?
23              MS. McKENZIE:  Objection, vague and
24      ambiguous.
25 A.   Depends in what context it is used, so one place where

```
1                CERTIFICATE OF NOTARY
2    STATE OF MICHIGAN )
3                     ) SS
4    COUNTY OF MONROE  )
5
6              I, LEISA M. PASTOR, a Notary Public in
7    and for the above county and state, do hereby
8    certify that the above deposition was taken before
9    me at the time and place hereinbefore set forth;
10   that the witness was by me first duly sworn to
11   testify to the truth, and nothing but the truth;
12   that the foregoing questions asked and answers made
13   by the witness were duly recorded by me
14   stenographically and reduced to computer
15   transcription; that this is a true, full and correct
16   transcript of my stenographic notes so taken; and
17   that I am not related to, nor of counsel to either
18   party nor interested in the event of this cause.
19
20
21                    _____
22                    LEISA M. PASTOR, CSR #3500, CRR
23                    Notary Public,
24                    Monroe County, Michigan
25                    My Commission expires:  9/7/13
```