17

optimum overlapping position Pn, enabling an improvement in the quality of the image resulting from superimposition. The image Ir1 is kept in the random-access memory of the microprocessor for the rest of the processing operation.

The next image I2 shown in Figure 11 at the instant t2 at output of the sensor 50 is transmitted to the microprocessor 60. This image I2 is, in turn, compared to the resultant image Ir1 in the same way as here above enabling the obtaining of an image Ir2, shown in Figure 11, resulting from the superimposition of I0, I1 and I2 in their optimum overlapping position. The process is repeated in the same way until the complete image Irn of the fingerprint 52, as shown in Figure 12, is obtained.

The processing algorithm of the system could take account of the results preceding a new search for optimal superimposition between two successive images to predict the most probable position of overlapping for the next image by the fact that there is a very high probability that the relative shift of the finger with respect to the sensor will be substantially constant. This considerably accelerates the speed of processing and reconstruction of the complete image Irn of the fingerprint by avoiding unnecessary computations.

The exemplary reconstruction of the complete image is not exhaustive and other strategies of reconstruction of the complete fingerprint may be envisaged.

In particular, here above, it has been assumed for simplicity's sake that the image of the fingerprint is reconstituted dot by dot out of partial images that are also obtained dot by dot. However, in view of the fact that these images must subsequently be used for identification and that this identification will

AML000059

18

generally be done by shape-recognition algorithms that may use processing operations for the extraction of contours, operations for vectorizing these contours etc., it is also possible to envisage a case where the image reconstitution is directly done in the form of sets of contour lines or vectors representing these contours. The useful image of a fingerprint is indeed a set of contours corresponding to the ridges of the lines of this fingerprint. For authentication, the sets of contours detected are compared with sets of pre-recorded contours corresponding to an individual whose identity is to be authenticated. The sets of contours could then be stored in the form of tables of vectors describing these contours.

It is then possible to carry out a contour extraction processing operation and/or a vectorization processing operation directly on a partial image and then perform correlations on the contours of successive vectors of partial images to assemble the partial images together and establish a complete image directly in the form of sets of contours or sets of vectors.

This solution makes it possible to avoid a dot-by-dot reconstitution of an image when this image would in any case have to be converted into a set of contours.

In other embodiments, the width of the sensor may be smaller than the width of the finger, thus further reducing its surface area. It would be enough then to scan the entire fingerprint at appropriate speed, with the system performing the reconstitution of the complete image.

AML000060

19

## WHAT IS CLAIMED IS:

1. A fingerprint-reading system comprising means for reading a fingerprint when the finger and a sensor belonging to the reading means are in contact and in a

5  relative motion of sliding of the sensor and the finger with respect to each other and means to reconstitute an image of the fingerprint from partial images obtained during this motion.

2. A fingerprint-reading system according to claim

10  1, wherein the sensor is fixed to a frame, the relative motion of the finger with respect to the sensor being done by the sliding of the finger on the sensor.

3. A fingerprint-reading system according to claim 1, wherein means are provided to shift the sensor with

15  respect to a surface on which a finger may be placed, the relative motion of the finger with respect to the sensor resulting from the sliding of the sensor with respect to the finger.

4. A fingerprint-reading system according to any

20  of the claims 1 to 3, wherein the sensor is an integrated circuit comprising a matrix of sensitive elements integrated into a semiconductor substrate into which there is integrated a multiplexer enabling the individual measurement of a signal generated in the

25  active layer of the sensor during the relative shift of the finger and the sensor with respect to each other.

5. A fingerprint-reading system according to any of the claims 1 to 5, wherein the sensor has an active layer sensitive to pressure and/or to temperature.

30  6. A fingerprint-reading system according to claim 5, wherein the active layer of the integrated circuit is a pyroelectric/piezoelectric layer enabling the sensing of a matrix pattern of pressure and/or temperature created by the fingerprint.

35  7. A fingerprint-reading system according to any of the claims 1 to 4, wherein the sensitive elements of

AML000061

20

the sensor are constituted by capacitive elements enabling the sensing of the matrix pattern of capacitance created by the lines of the finger.

8.  A fingerprint-reading system according to ~~any~~ ~~of the claims 4 to 7~~ [claim 4], wherein the sensitive element of the sensor is rectangular.

9.  A fingerprint-reading system according to any of the claims 1 to 8, wherein the surface area of the sensor is smaller than the surface area of the fingerprint and delivers only partial images of the complete fingerprint.

10.  A fingerprint-reading system according to ~~any~~ ~~of the claims 1 to 9~~ [any one of the claims 2, 3 or 1], wherein the sensor takes the form of a small bar with a length far smaller than its width.

11.  A fingerprint-reading system according to claim 10, wherein the width of the small bar is substantially equal to that of a finger.

12.  A fingerprint-reading system ~~according to one~~ ~~of the claims 10 and 11~~ [according to claim 10], wherein the sensor has an active surface whose width ranges from about 1 centimeter to 2.5 centimeters and whose length is smaller than 5 millimeters.

13.  A fingerprint-reading system according to any of the claims ~~1 to 12~~ [2, 3 or 1], wherein the sensor comprises only one row of sensitive elements.

14.  A fingerprint-reading system according to ~~any~~ [any one] ~~of the claims 1 to 13~~ [of the claims 2, 3 or 1] comprising, for the reconstruction of an image of a fingerprint, an electronic circuit with a microprocessor, a read-only memory programmed with an algorithm enabling the reconstruction of the complete image of the fingerprint and the identification of the individual, and a read-only memory.

15.  A fingerprint-reading system according to ~~any~~ [any one] ~~of the claims 1 to 14~~ [of the claims 2, 3 or 1], comprising partial image

21

processing means provided by the sensor, making it possible in particular to provide contours of fingerprint ridge lines, the image reconstitution means setting up, on the basis of these contours, a total
5  fingerprint image in the form of contours.

16.    A fingerprint-reading system according to claims 15, wherein the partial image-processing means take account of the results preceding a new search for optimal superimposition between two successive images
10  to predict the most probable position of overlapping for the next image by the fact that there is a very high probability that the relative shift of the finger with respect to the sensor will be substantially constant.

# 𝔇eclaration, 𝔓ower 𝔒f 𝔄ttorney and 𝔓etition

Page 1 of 3

WE (I) the undersigned inventor(s), hereby declare(s) that:

My residence, post office address and citizenship are as stated below next to my name,

We (I) believe that we are (I am) the original, first, and joint (sole) inventor(s) of the subject matter which is claimed and for which a patent is sought on the invention entitled

FINGERPRINT-READING SYSTEM
_____

the specification of which

      ☒ is attached hereto.

      ☐ was filed on _____ as

         Application Serial No. _____

         and amended on _____ .

      ☐ was filed as PCT international application

      Number _____

      on _____ ,

      and was amended under PCT Article 19

      on _____ (if applicable).

We (I) hereby state that we (I) have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

We (I) acknowledge the duty to disclose information known to be material to the patentability of this application as defined in Section 1.56 of Title 37 Code of Federal Regulations.

We (I) hereby claim foreign priority benefits under 35 U.S.C. § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate, or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed. Prior Foreign Application(s)

| Application No. | Country | Day/Month/Year | Priority Claimed |
|---|---|---|---|
| 96 07419 | FRANCE | 14 JUNE 1996 | ☒ Yes  ☐ No |
| _____ | _____ | _____ | ☐ Yes  ☐ No |
| _____ | _____ | _____ | ☐ Yes  ☐ No |
| _____ | _____ | _____ | ☐ Yes  ☐ No |

1/96

AML000064

Page 2 of 3
Declaration

We (I) hereby claim the benefit under Title 35, United States Code, § 119(e) of any United States provisional application(s) listed below.

| (Application Number) | (Filing Date) |
| --- | --- |
| (Application Number) | (Filing Date) |

We (I) hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| Application Serial No. | Filing Date | Status (pending, patented, abandoned) |
| --- | --- | --- |
| | | |
| | | |

And we (I) hereby appoint: Norman F. Oblon, Registration Number 24,618; Marvin J. Spivak, Registration Number 24,913; C. Irvin McClelland, Registration Number 21,124; Gregory J. Maier, Registration Number 25,599; Arthur I. Neustadt, Registration Number 24,854; Richard D. Kelly, Registration Number 27,757; James D. Hamilton, Registration Number 28,421; Eckhard H. Kuesters, Registration Number 28,870; Robert T. Pous, Registration Number 29,099; Charles L. Gholz, Registration Number 26,395; Vincent J. Sunderdick, Registration Number 29,004; William E. Beaumont, Registration Number 30,996; Steven B. Kelber, Registration Number 30,073; Robert F. Gnuse, Registration Number 27,295; Jean-Paul Lavalleye, Registration Number 31,451; Timothy R. Schwartz, Registration Number 32,171; Stephen G. Baxter, Registration Number 32,884; Martin M. Zoltick, Registration Number 35,745; Robert W. Hahl, Registration Number 33,893; Richard L. Treanor, Registration Number 36,379; Steven P. Weihrouch, Registration Number 32,829; John T. Goolkasian, Registration Number 26,142; Marc R. Labgold, Registration Number 34,651; William J. Healey, Registration Number 36,160; Richard L. Chinn, Registration Number 34,305; Steven E. Lipman, Registration Number 30,011; and Jacques M. Dulin, Registration Number 24,067; our (my) attorneys, with full powers of substitution and revocation, to prosecute this application and to transact all business in the Patent Office connected therewith; and we (I) hereby request that all correspondence regarding this application be sent to the firm of OBLON, SPIVAK, McCLELLAND, MAIER & NEUSTADT, P.C., whose Post Office Address is: Fourth Floor, 1755 Jefferson Davis Highway, Arlington, Virginia 22202.

We (I) declare that all statements made herein of our (my) own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Jean-François MAINGUET

NAME OF FIRST SOLE INVENTOR

*Jean-François Mainguet*

Signature of Inventor

MAY 15, 1997
Date

Residence: _____

7 Allée du Parc G. Pompidou

38100 GRENOBLE          FRANCE

Citizen of: __FRANCE__

Post Office Address: _____

7 Allée du Parc G. Pompidou

38100 GRENOBLE          FRANCE

1/96

PRINT OF DRAWINGS
AS ORIGINALLY FILED

OBLON ET AL (703) 413-3000
DOCKET # 154-7648-2 SHEET 1 of 4

1/4



FIG.1



FIG.2



FIG.3

AML000066

PRINT OF DRAWINGS
AS ORIGINALLY FILED

OBLON ET AL (703) 413-3000
DOCKET # 154-2548-2 SHEET 2 OF 4

2/4



FIG.4



FIG.5

AML000067

PRINT OF DRAWINGS
AS ORIGINALLY FILED

OBLON ET AL (703) 413-3000
DOCKET #154 3545-2 SHEET 3 OF 4

3/4



## FIG.6



## FIG.7



## FIG.8



## FIG.9



## FIG.10

AML000068

PRINT OF DRAWINGS
AS ORIGINALLY FILED

OBLON ET AL (703) 413-3000
DOCKET # 164-2648-2 SHEET 4 of

4/4



# FIG.11



# FIG.12

N.D.Cal. 06-cv-2138

AML000069

Docket No. 154-2548-2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF: Jean-Francois MAINGUET          GROUP ART UNIT:

SERIAL NUMBER: NEW APPLICATION                        EXAMINER:

FILED: HEREWITH

FOR: FINGERPRINT-READING SYSTEM

### REQUEST FOR PRIORITY UNDER 35 U.S.C. 119
### AND THE INTERNATIONAL CONVENTION

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

In the matter of the above-identified application for patent, notice is hereby given that the applicants

claim as priority:

| COUNTRY | APPLICATION NO: | MONTH/DAY/YEAR |
|---------|-----------------|----------------|
| FRANCE  | 96 07419        | June 14, 1996  |

A Certified copy of the corresponding Convention Application is being submitted herewith.

Respectfully submitted,

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.

Marvin J. Spivak
Attorney of Record
Registration No. 24,913

C. Irvin McClelland
Registration Number 21,124

Fourth Floor
1755 Jefferson Davis Highway
Arlington, Virginia 22202
(703) 413-3000
Fax No. (703) 413-2220

(OSMMN 1/97)

REPUBLIQUE FRANCAISE



**INPI**
INSTITUT
NATIONAL DE
LA PROPRIETE
INDUSTRIELLE

# BREVET D'INVENTION

## CERTIFICAT D'UTILITÉ - CERTIFICAT D'ADDITION

## COPIE OFFICIELLE

Le Directeur général de l'Institut national de la propriété industrielle certifie que le document ci-annexé est la copie certifiée conforme d'une demande de titre de propriété industrielle déposée à l'Institut.

Fait à Paris, le **1 8 AVR. 1997**

Pour le Directeur général de l'Institut
national de la propriété industrielle
Le Chef de Division

Yves CAMPENON

| | SIEGE |
|---|---|
| **INSTITUT** | 26 bis, rue de Saint Petersbourg |
| **NATIONAL DE** | 75800 PARIS Cedex 08 |
| **LA PROPRIETE** | Téléphone : 01 53 04 53 04 |
| **INDUSTRIELLE** | Télécopie : 01 42 93 59 30 |
| ETABLISSEMENT PUBLIC NATIONAL | CREE PAR LA LOI N  51-444 DU 19 AVRIL 1951 |

AML000071

**BREVET D'INVENTION, CERTIFICAT D'UTILITÉ**   **cerfa**

Code de la propriété intellectuelle-Livre VI

N° 55 -1328

REQUÊTE EN DÉLIVRANCE

Confirmation d'un dépôt par télécopie ☐

Cet imprimé est à remplir à l'encre noire en lettres capitales

..s, rue de Saint Pétersbourg **14 JUIN 1996**
.800 Paris Cedex 08
éphone : (1) 42.94.52.52 Télécopie : (1) 42.93.59.30

————————— Réservé à l'INPI —————————

| | |
|---|---|
| DATE DE REMISE DES PIÈCES | **14 JUIN 1996** |
| N° D'ENREGISTREMENT NATIONAL | **96  07419** |
| DÉPARTEMENT DE DÉPÔT | |
| DATE DE DÉPÔT | **14 JUIN 1996** |

**1**  NOM ET ADRESSE DU DEMANDEUR OU DU MANDATAIRE
À QUI LA CORRESPONDANCE DOIT ÊTRE ADRESSÉE

**Monsieur Michel GUERIN**

THOMSON - CSF
S.C.P.I.
13, avenue du Président Salvador Allende
94117 ARCUEIL CEDEX

**2 DEMANDE**  Nature du titre de propriété industrielle

☒ brevet d'invention   ☐ demande divisionnaire

☐ certificat d'utilité   ☐ transformation d'une demande de brevet européen

demande initiale

☐ brevet d'invention   ☐ certificat d'utilité n°

| n° du pouvoir permanent | références du correspondant | téléphone |
|---|---|---|
| PG 3413 | 60.12.4 | 41.88.82.78 |
| | | date |

Établissement du rapport de recherche   ☐ différé   ☒ immédiat

Le demandeur, personne physique, requiert le paiement échelonné de la redevance   ☐ oui   ☒ non

Titre de l'invention (200 caractères maximum)

**SYSTEME DE LECTURE D'EMPREINTES DIGITALES**

**3 DEMANDEUR (S)**  n° SIREN  **5.5.2.0.5.9.0.2.4**  code APE-NAF  . . . .

Nom et prénoms (souligner le nom patronymique) ou dénomination

Forme juridique

**Société dite : THOMSON-CSF**

Nationalité (s)   **Française**

Adresse (s) complète (s)                                                    Pays

**173 Boulevard Haussmann                     FRANCE
75008 PARIS**

En cas d'insuffisance de place, poursuivre sur papier libre ☐

**4 INVENTEUR (S)**  Les inventeurs sont les demandeurs   ☐ oui   ☒ non   Si la réponse est non, fournir une désignation séparée

**5 RÉDUCTION DU TAUX DES REDEVANCES**   ☐ requise pour la 1ère fois   ☐ requise antérieurement au dépôt : joindre copie de la décision d'admission

**6 DÉCLARATION DE PRIORITÉ OU REQUÊTE DU BÉNÉFICE DE LA DATE DE DÉPÔT D'UNE DEMANDE ANTÉRIEURE**

| pays d'origine | numéro | date de dépôt | nature de la demande |
|---|---|---|---|
| | | | |

**7 DIVISIONS**  antérieures à la présente demande   n°          date          n°          date

**8  SIGNATURE DU DEMANDEUR OU DU MANDATAIRE**
(nom et qualité du signataire - n° d'inscription)

Michel GUERIN

SIGNATURE DU PREPOSÉ À LA RÉCEPTION    SIGNATURE APRÈS ENREGISTREMENT DE LA DEMANDE À L'INPI



**INPI**
INSTITUT
NATIONAL DE
LA PROPRIÉTÉ
INDUSTRIELLE

## BREVET D'INVENTION, CERTIFICAT D'UTILITE

### DÉSIGNATION DE L'INVENTEUR
(si le demandeur n'est pas l'inventeur ou l'unique inventeur)

**DIVISION ADMINISTRATIVE DES BREVETS**

26bis, rue de Saint-Pétersbourg
75800 Paris Cédex 08
Tél. : (1) 42 94 52 52  -  Télécopie : (1) 42 93 59 30

N° D'ENREGISTREMENT NATIONAL

96 07449

**TITRE DE L'INVENTION :**

SYSTEME DE LECTURE D'EMPREINTES DIGITALES

**LE (S) SOUSSIGNÉ (S) THOMSON-CSF**

**DÉSIGNE (NT) EN TANT QU'INVENTEUR (S)** (indiquer nom, prénoms, adresse et souligner le nom patronymique) :

Monsieur MAINGUET Jean–François

Domicilié à :

THOMSON-CSF
SCPI
50 rue Jean-Pierre TIMBAUD
B.P. 329
92402 COURBEVOIE CEDEX

**NOTA :** A titre exceptionnel, le nom de l'inventeur peut être suivi de celui de la société à laquelle il appartient (société d'appartenance) lorsque celle-ci est différente de la société déposante ou titulaire.

Date et signature (s) du (des) demandeur (s) ou du mandataire

4 JUIN 1996

Michel GUERIN

PA 1130701/95

ORIGINAL

1

## SYSTEME DE LECTURE D'EMPREINTES DIGITALES

L'invention concerne les systèmes de lecture d'empreintes digitales, utilisés notamment dans des dispositifs d'authentification de personnes.

5    Les nombreux systèmes d'authentification des personnes basés sur l'analyse des empreintes digitales, comportent au moins un capteur permettant d'obtenir une image de l'empreinte digitale de la personne à identifier. Dans les systèmes actuels, le doigt est posé sur le capteur dont la surface de lecture doit être nécessairement de l'ordre de grandeur du doigt.

10   Le capteur est associé à un système d'analyse permettant de comparer l'image de l'empreinte digitale qu'il fournit, à une image d'une empreinte digitale de référence stockée sur un médium adéquat, par exemple une carte à puce.

Dans la plupart des cas, les capteurs fournissent une information

15   de type analogique et le système d'analyse fait appel à un traitement numérique de l'image de l'empreinte digitale qui doit être numérisée en sortie du capteur à l'aide d'un convertisseur analogique numérique. Dans certaines réalisations, le capteur délivre directement l'image numérisée.

Les systèmes de lecture des empreintes digitales sont souvent

20   basés sur l'utilisation de dispositifs optiques comme par exemple une caméra vidéo captant l'image du doigt, mais une simple photographie du même doigt permet d'obtenir la même image en sortie de la caméra et ainsi de frauder le système. Pour pallier à cet inconvénient, certains systèmes utilisent des prismes ou des microprismes afin de s'assurer que c'est bien un

25   véritable doigt et non une photographie qui se trouve placé devant le capteur, la réflexion de la lumière ne s'effectuant qu'aux endroits où les sillons de l'empreinte ne touchent pas le prisme, une photographie est alors inopérante. Néanmoins les systèmes optiques ne permettent pas de déterminer si le doigt qui est placé devant le capteur est bien vivant et n'est

30   donc pas un doigt par exemple moulé. Les systèmes optiques présentent d'autres inconvénients comme par exemple leur volume important et un coût de production élevé.

D'autres moyens ont été proposés pour réaliser des dispositifs d'authentification de personnes par les empreintes digitales, exploitant les

AML000074

2

possibilités de traitement collectif de l'industrie du semi-conducteur, donc potentiellement moins coûteux et offrant les avantages de l'intégration du capteur et de tout ou partie de la chaîne de traitement des données du dispositif d'authentification notamment la numérisation de l'image en sortie
5   du capteur, le stockage de l'image de référence et l'authentification. Le capteur de lecture des empreintes digitales comporte une matrice d'éléments sensibles, organisée en lignes et en colonnes, fournissant un signal électrique différent selon qu'une crête du sillon de l'empreinte digitale touche ou ne touche pas un élément sensible du capteur.

10   Des brevets ont été déposés sur différents moyens de lecture des empreintes digitales :

- le brevet US,4,353,056, décrit un principe de lecture basé sur la variation de la capacité des éléments sensibles du capteur.

D'autres systèmes comportent des capteurs ayant des composés
15   sensibles à la pression, à la température ou bien à la pression et à la température transformant l'information spatiale de pression et/ou de température en un signal électrique qui est ensuite collecté par un multiplexeur à semi-conducteurs, qui peut être par exemple une matrice de transfert de charges, connue sous la dénomination anglaise de "CCD", le
20   brevet US,4,394,773, décrit un tel principe.

Les capteurs basés sur les effets piézo et/ou pyroélectrique sont les plus intéressants car ils sont sensibles à la pression et/ou à la chaleur exercée sur ses éléments sensibles, ce qui permet de déterminer, lors de la lecture de l'empreinte digitale, si le doigt est bien vivant par la chaleur
25   propre qu'il dégage. Il est aussi possible de détecter les variations dues à la pulsation du sang dans le doigt, induisant une variation de chaleur et/ou de pression, ce qui permet d'obtenir une plus grande fiabilité dans l'authentification de l'empreinte digitale.

Ces types de capteurs, directement intégrables sur un substrat
30   semi-conducteur ont des inconvénients qui freinent leur introduction sur le marché. La surface du capteur est nécessairement de l'ordre de grandeur d'un doigt, soit de l'ordre de plusieurs centimètres carrés à une dizaine de centimètres carrés lorsqu'on souhaite avoir la totalité de la première phalange du doigt qui, dans ce cas, doit être roulé sur le capteur afin de
35   présenter la totalité de l'empreinte digitale sur le capteur. Ceci diminue le

3

nombre de candidats possibles dans une tranche de silicium, les rendements de fabrication des tranches de silicium diminuent proportionnellement à leur surface augmentant considérablement le coût de fabrication.

5       Le signal électrique fourni par les capteurs intégrés sur un substrat semi-conducteur est fugitif et un système spécifique est nécessaire pour le maintenir dans le temps car les charges électriques sont induites par des variations des effets physiques (température, pression...) sur le capteur et en conséquence le signal à sa sortie tend à disparaître à la mise

10     en équilibre des effets physiques. Les constantes de temps de disparition du signal sont de l'ordre de quelques millisecondes à quelques secondes dans les cas favorables.

       Le résultat pratique est la production d'une série d'images à partir du moment où le doigt est posé sur le capteur. La qualité de contraste de

15     ces images n'est pas stable et elles ont tendance à s'évanouir ce qui complique la tâche du système de reconnaissance car il doit alors analyser toutes les images produites en permanence par le capteur afin de trouver la plus correcte pour l'authentification.

       Des systèmes avec une excitation extérieure au capteur ont été

20     proposés, par exemple envoi d'un faisceau d'énergie sous forme de micro-ondes, mais ils compliquent le système et augmentent son volume et son prix.

       On peut pallier la disparition transitoire de l'image de l'empreinte à l'aide d'une mémoire électronique mais ceci complique la conception du

25     capteur et augmente son coût de fabrication car cela requiert une technologie permettant de réaliser cette mémorisation et il est très difficile de construire un système suffisamment précis, fiable et peu coûteux capable de décider quelle est la meilleure image parmi toutes celles produites par le capteur.

30     La présente invention propose de pallier les inconvénients de l'art antérieur en proposant un système de lecture d'empreinte digitale comportant des moyens de lecture de l'empreinte digitale lorsque le doigt et un capteur appartenant aux moyens de lecture sont en contact dans un mouvement relatif de glissement du capteur et du doigt l'un par rapport à

AML000076

4

l'autre et des moyens pour reconstituer une image de l'empreinte à partir d'images partielles obtenues pendant ce mouvement.

Un glissement du doigt sur un capteur fixé sur un bâti, ou le glissement d'un capteur mobile sur un doigt fixe ou d'une façon plus générale le glissement du doigt et du capteur l'un par rapport à l'autre, stabilise la qualité de l'image fournie par le capteur. En effet au moment du glissement du doigt sur le capteur, les variations physiques au niveau de chaque élément sensible du capteur sont permanentes car les sillons de l'empreinte digitale le touchent successivement avec une vitesse du même ordre de grandeur ou plus rapide que la constante de temps caractéristique de la couche sensible du capteur. Le capteur fournit dans ces conditions une succession d'images ayant un contraste de qualité constante.

Un autre aspect de cette invention réside dans le fait que, dans la mesure où on effectue un glissement relatif du doigt sur le capteur, il est possible de réduire la taille du capteur à des dimensions inférieures à la taille du doigt Par exemple en supposant que le doigt se déplace sur le capteur dans le sens de sa longueur, la longueur du capteur peut être réduite, ne couvrant plus qu'une petite surface de l'empreinte digitale. Dans ce cas, les signaux électriques fournis par le capteur pendant le glissement relatif du doigt sur le capteur, correspondent à une succession d'images partielles de l'empreinte du doigt et dans la mesure où la vitesse relative de déplacement du doigt par rapport au capteur ne dépasse pas une certaine valeur maximale, une image fournie par le capteur à un instant donné recouvrira au moins partiellement la suivante. L'image complète de l'empreinte digitale pourra être reconstituée par un système de traitement spécifique.

La réduction de taille du capteur et donc, sa surface, aura comme conséquence une diminution importante de son coût de fabrication.

L'invention propose que le capteur appartenant aux moyens de lecture de l'empreinte digitale, soit caractérisé par le fait que la surface du capteur est plus petite que la surface de l'empreinte digitale et ne délivre que des images partielles de l'empreinte digitale complète. La reconstruction de l'image complète de l'empreinte digitale étant obtenue par la superposition d'images successives fournies par le capteur au cours de son déplacement relatif par rapport au doigt.

5

D'autres caractéristiques de l'invention apparaîtront à la lecture de la description détaillée des réalisations suivantes et qui est faite en référence aux dessins annexés dans lesquels :

- la figure 1 représente un vue générale du capteur d'empreinte ;
5 - la figure 2 montre l'utilisation du capteur d'empreinte ;
- la figure 3 représente une coupe schématique  montrant la constitution du capteur ;
- la figure 4 représente le synoptique d'un exemple de réalisation d'un système de lecture d'empreintes digitales selon l'invention
10 ;
- la figure 5 représente différentes positions relatives du capteur du doigt au moment de la lecture de l'empreinte ;
- les figures 6 et 7 représentent deux images consécutives en sortie du capteur ;
15 - les figures 8, 9 et 10 représentent des essais de superpositions de deux images successives en sortie du capteur ;
- les figures 11 et 12 représentent deux étapes de reconstitution de l'image complète de l'empreinte digitale.

La figure 1, montre une vue générale d'un exemple de réalisation
20 du capteur d'empreinte selon l'invention. Le capteur d'empreinte 10, est un circuit intégré ayant la forme d'une barrette de largeur sensiblement égale a celle d'un doigt 11, par exemple 1 ou 2 centimètres, mais de longueur beaucoup plus petite que sa largeur par exemple quelques millimètres, couvrant partiellement l'empreinte digitale à lire. Le capteur est contenu
25 dans un support 12 comportant des broches de connexion extérieure 13.

Dans une réalisation, le circuit intégré est constitué d'une couche active pyro/piézo-électrique placée entre une électrode supérieure et un réseau matriciel d'électrodes inférieures. Les électrodes inférieures reposent sur un substrat semi-conducteur dans lequel est formé un circuit
30 électronique  intégré apte à traiter  les charges électriques engendrées par la couche  pyro/piézo-électrique sur chacune des électrodes du réseau. Ce circuit électronique intégré est relié à des  broches de connexion extérieures qui peuvent transmettre des signaux électriques dont l'ensemble représente une image d'un motif de pression exercé sur la couche active. La
35 constitution des électrodes inférieures  en réseau matriciel permet de

AML000078

6

réaliser un réseau d'éléments sensibles pyro/piézo-électriques individuels même si la couche pyro/piézo-électrique est continue. Le réseau matriciel d'éléments sensibles est organisé en lignes et colonnes.

5      Les éléments sensibles du capteur sont généralement de forme carrée. La sensibilité des éléments sensibles est proportionnelle à leur surface. Il est possible d'augmenter la sensibilité des éléments sensibles en augmentant leur surface, par exemple, en gardant la même largeur de l'élément sensible, augmenter sa longueur dans le sens de déplacement relatif du doigt par rapport au capteur. Par exemple dans le cas d'un
10    déplacement relatif du doigt par rapport au capteur dans le sens des colonnes de la matrice d'éléments sensibles, on pourrait pratiquement doubler leur sensibilité en réalisant des éléments sensibles de forme rectangulaire dont la longueur dans le sens des colonnes serait double de leur largeur dans le sens des lignes de la matrice d'éléments sensibles. Ceci
15    comporte l'avantage d'augmenter la qualité de définition et de contraste des images fournies par le capteur.

La figure 2 montre le doigt 11 lorsqu'il est appuyé sur la surface active du circuit intégré à un instant donné de son déplacement relatif sur le capteur 10, un motif de pression est engendré dans la couche pyro et piézo-
20    électrique et ce motif est détecté par le réseau matriciel. La détection se fait sous forme de mesure de variation de charges engendrées dans les différents éléments pyro/piézo-électriques du réseau. Ces variations de charges sont obtenues sur les électrodes inférieures du réseau. Les signaux électriques fournis par le capteur correspondent à une image du motif de
25    pression et de température appliqués contre la surface active du capteur à un instant donné. Si on utilisait ces signaux pour afficher cette image à un instant donné, on observerait une image représentant une partie de l'empreinte digitale du doigt appuyé sur le capteur à un instant donné de son déplacement relatif sur le capteur.

30    Dans une autre réalisation, selon l'invention, les éléments sensibles de la matrice du capteur sont constitués par des éléments capacitifs permettant de capter le motif matriciel de capacité créé par les crêtes et les creux de l'empreinte digitale glissant sur la surface du capteur. Le motif matriciel de capacité est transformé par le capteur en signaux
35    électriques qui comme dans le cas de la réalisation précédente

                                                          AML000079

7

correspondent à une partie de l'empreinte digitale à un instant donné de son déplacement relatif sur le capteur.

Afin de diminuer le coût du système, il serait possible d'utiliser un capteur comportant une seule ligne éléments sensibles et d'effectuer un
5 déplacement relatif du doigt sensiblement perpendiculairement à la ligne d'éléments sensibles mais il faudrait connaître précisément la vitesse de déplacement relatif du doigt part rapport au capteur et à tout moment du déplacement afin de reconstituer sans déformation, l'image complète de l'empreinte digitale. Une solution pour reconstituer l'image sans déformation,
10 consisterait à imposer la vitesse relative de déplacement du capteur par rapport au doigt, par exemple en utilisant un capteur entraîné par un moteur électrique asservi, le doigt étant fixe.

Dans un système d'authentification d'empreintes digitales à très faible coût selon l'invention, il serait possible d'utiliser un capteur
15 comportant une seule ligne d'éléments sensibles et sans la connaissance ou l'imposition par le système, de la vitesse de déplacement relatif du doigt sur le capteur. En effet, bien que l'empreinte digitale ne puisse être reconstituée dans sa forme exacte, elle pourrait être authentifiée à l'aide d'un algorithme adéquat de traitement d'image.
20 Afin de s'affranchir de ces contraintes le capteur devra comporter plusieurs lignes d'éléments sensibles permettant de reconstituer par le système de lecture, l'image complète de l'empreinte digitale. De préférence le nombre de lignes du capteur sera le plus faible possible afin d'obtenir un capteur ayant une très faible surface et en conséquence un faible coût.
25 Le nombre minimum de lignes du capteur nécessaires dépend :
- de la taille des éléments sensibles du capteur (pixels)
- de la vitesse relative du doigt par rapport au capteur
- du nombre d'images par seconde que pourra délivrer le capteur car il faut impérativement un recouvrement suffisant entre deux
30 images successives
- de l'efficacité de l'algorithme de traitement des images partielles issues du capteur, permettant la reconstitution de l'image complète de l'empreinte.

Il faut au moins une ligne de recouvrement entre deux images
35 successives fournies par le capteur, mais pratiquement environ 5 à 6 lignes

                                                                     AML000080

8

de recouvrement semblent nécessaires afin de pallier certains défauts du capteur et rendre le système plus tolérant aux pertes de qualité de l'image, sachant que la distance entre deux sillons consécutifs de l'empreinte digitale est en moyenne de l'ordre de 120 micromètres. Le capteur doit comporter un
5   nombre de lignes suffisant afin de pouvoir reconstruire sans trop de difficultés l'image complète de l'empreinte digitale. Le nombre de lignes peut être établit de la façon suivante :

        Considérons que la distance entre deux éléments sensibles consécutifs est de 50 micromètres et que la largeur de la zone active du
10   capteur est de 2,5 centimètres, chaque ligne du capteur comportera 500 éléments sensibles. En prenant un capteur comportant 40 lignes (soit une longueur du capteur de 2 millimètres) le nombre total d'éléments sensibles à lire sera de 200000. Dans le cas où la vitesse de lecture est limitée à 1 million d'éléments sensibles par seconde, le capteur fournira 50 images par
15   seconde. En prenant un recouvrement sur la longueur des images de 10 éléments sensibles, soit de 10 lignes, le déplacement maximum du doigt entre deux images consécutives ne doit pas dépasser 30 éléments sensibles entre deux images, soit 1500 micromètres en 20 millisecondes, soit 7,5 centimètres par seconde, ce qui est une vitesse raisonnable de
20   déplacement relatif du doigt par rapport au capteur.

        La réduction du nombre de lignes du capteur, permet d'obtenir plus d'image par seconde pour une même vitesse de lecture d'éléments sensibles par seconde, mais la distance maximum pouvant être parcourue par le doigt sur le capteur est réduite d'autant. Il faut plutôt augmenter la
25   fréquence de lecture des éléments sensibles pour pouvoir accepter des vitesses de déplacement relatif du doigt sur le capteur plus importantes.

        Les dimensions de la surface active du capteur seront comprises de préférence entre 1 cm et 2,5 cm pour la largeur et inférieures à 5 millimètres pour la longueur.

30         On pourrait envisager, bien que cela rende le traitement électronique plus complexe, un capteur de largeur bien inférieure à celle d'un doigt, à condition de prévoir plusieurs passages du doigt sur le capteur (ou du capteur sur le doigt) pour couvrir toute la surface désirée de l'empreinte à lire. Ceci permet d'avoir un capteur de petite dimension, donc
35   moins coûteux à réaliser.

9

Les système d'authentification des personnes par les empreintes digitales comportent toujours en pratique un traitement numérique de l'image pour authentifier l'individu. La réalisation la plus simple consiste à incorporer l'algorithme de reconstruction de l'image dans le système comportant l'algorithme d'authentification.

5

Une solution possible est l'intégration sur le même substrat du capteur, du convertisseur analogique numérique qui digitalise l'image et envoie les données résultantes à un microprocesseur comportant une mémoire morte contenant l'algorithme de reconstruction et une mémoire vive contenant l'image reconstruite en fin de traitement. Cette image sera ensuite traitée dans un dispositif du système effectuant l'identification.

10

Ces différentes solutions proposées ne sont pas limitatives et d'autres solutions d'intégration sont possibles suivant les possibilités offertes par les technologies des semi-conducteurs.

15

La figure 3 représente schématiquement un exemple d'un circuit intégré constituant le capteur d'empreinte selon l'invention.

Le circuit intégré est formé sur un substrat semi-conducteur 20, qui est en principe un substrat de silicium. Dans ce substrat sont formés des circuits de lecture et de traitement de charges électriques 22 ; ces circuits sont par exemple des circuits CCD (circuits à transfert de charges), ou des circuits C-MOS. Ils sont réalisés selon les technologies courantes de fabrication de circuits intégrés au silicium. Les circuits sont constitués en réseau, en fonction du motif matriciel d'éléments piézo-électriques qui sera formé ultérieurement.

20

25

L'ensemble des circuits de lecture et de traitement de signaux est en principe recouvert d'une couche de planarisation 24, qui est par exemple une couche de polyimide de quelques micromètres d'épaisseur, déposée à la tournette.

30

La couche de planarisation 24 est gravée périodiquement, en fonction du motif d'éléments piézo-électriques qui va être formé, pour ouvrir des ouvertures 26 par lesquelles les éléments piézo-électriques individuels pourront être reliés chacun à un circuit de lecture de charges respectif du substrat silicium.

AML000082

10

Un réseau d'électrodes inférieures 28 est formé sur la couche de planarisation ; chaque électrode vient en contact, à travers une ouverture 26 respective, avec un circuit de lecture de charge du substrat de silicium.

5 Une couche active piézo-électrique 30 est déposée sur le substrat ainsi recouvert d'un réseau d'électrodes. Cette couche est de préférence une couche de matériau polymère pyroélectrique et elle peut être continue. Cette couche est relativement souple (matière plastique polymère). Elle est recouverte d'une électrode supérieure 32 continue. On définit ainsi un réseau d'éléments piézo-électriques constitués chacun par une électrode
10 inférieure 28, la portion de couche piézo-électrique 30 située juste au-dessus d'elle et la portion d'électrode supérieure 32 qui la recouvre. Les charges électriques engendrées par une pression localement exercée sur cet élément sont lues par le circuit de lecture correspondant, relié électriquement à l'électrode inférieure correspondante à travers une
15 ouverture 26.

Une couche de protection 34, par exemple une couche de polyimide d'une dizaine de micromètres d'épaisseur, est déposée au-dessus de l'électrode supérieure 32. Cette couche de protection doit être à la fois assez rigide et assez souple pour transmettre verticalement sans
20 modification le motif de pressions qui est exercé sur elle (le doigt étant appuyé directement sur cette couche).

Les circuits électroniques du substrat 20 sont raccordés à l'extérieur par l'intermédiaire de plots de contacts non représentés situés à la surface du circuit.

25 Le matériau de la couche pyro/piézo-électrique peut être par exemple un polyfluorure de vinylidène (PVDF), un polyfluorure de vinylidène-trifluoroéthylène (PVDF-TrFE), un polycyanure de vinylidène-vinylacétate (PVDCN-VAc), un polycyanure de vinylidène-fluorure de vinylidène (PVDCN-VDF). D'autres couches sensibles sont possibles, en
30 particulier toutes celles qui produisent des charges électriques en fonction d'un paramètre physique.

Dans le cas des copolymères précédemment cités, le principal effet utilisé est la génération des charges électriques induites par la variation de température et/ou de pression du copolymère. Cette variation de
35 température et/ou de pression est induite par le contact des crêtes des

AML000083

11

sillons de l'empreinte digitale avec la surface du capteur, en général
constitué d'une fine couche de protection de quelques dizaines de
micromètres  évitant une dissipation thermique latérale trop importante,
déposée sur un réseau d'électrodes connectés au circuit de multiplexage.

5    Nous allons décrire par la suite un exemple de réalisation d'un
système selon l'invention comportant un capteur ayant une surface bien
inférieure à la surface de l'empreinte digitale à lire et dont la longueur
(nombre de lignes de matrice du capteur) est bien plus petite que sa largeur
(longueur des lignes du capteur), la largeur du capteur dans cet exemple
10   étant au moins égale à la largeur du doigt dont on veut lire l'empreinte
digitale.

La figure 4, représente un synoptique d'un système comportant un
capteur 50 sur un substrat semi-conducteur, ayant un convertisseur
analogique/numérique 51, intégré sur le même substrat et fournissant des
15   images  partielles numérisées de l'empreinte digitale 52, par exemple d'un
doigt 53, à des instants successifs au cours  d'un  déplacement relatif du
doigt 53 sur le capteur 50. Les images partielles numérisées sont
présentées aux entrées de traitement 55 d'un microprocesseur 60
comportant une mémoire vive 61 et une mémoire morte 63 contenant un
20   algorithme de traitement  permettant la reconstruction de l'image complète
de l'empreinte digitale 52 du doigt 53 et l'authentification de cette empreinte.

Nous allons décrire le fonctionnement du système représenté par
le synoptique de la figure 4 :

Considérons le doigt 53 et son empreinte digitale 52, représentés
25   à la figure 5. Le doigt 53, glisse sur le capteur perpendiculairement aux
lignes de la matrice d'éléments sensibles du capteur, selon la direction V.
Les différentes positions aux instants t0, t1, t2, ....tn de la fenêtre active du
capteur au cours de son déplacement relatif par rapport au doigt 53, sont
représentées en pointillés. Le capteur génère  les images successives I0,
30   I1,I2,....In, aux instants respectifs t0,t1,t2,.....tn et la vitesse de déplacement
relative du doigt sur le capteur est telle qu'au moins une image recouvre
partiellement la suivante. Par exemple I0 recouvre partiellement I1, I1
recouvre partiellement I2 et ainsi de suite.

Pour rendre plus claire la représentation du mouvement relatif du
35   doigt 53 par rapport au capteur 50, sur la figure 5, le doigt 53 est représenté

AML000084

**12**

fixe et le capteur 50 mobile par rapport au doigt, le fonctionnement du système serait le même dans le cas d'un doigt mobile et un capteur fixe ou d'une façon plus générale un doigt mobile glissant sur un capteur mobile. Le paramètre à considérer étant le mouvement relatif du doigt et du capteur,
5 l'un par rapport à l'autre, dans une direction sensiblement perpendiculaire à la largeur du capteur.

Considérons l'instant initial t0 comme étant l'instant de lecture de la première image partielle I0 de l'empreinte digitale 52. La figure 6 montre la première image partielle I0 fournie par le capteur à l'instant t0 et la figure
10 7 la deuxième l'image partielle I1 fournie par le capteur à l'instant suivant t1, de l'empreinte digitale 52.

Les images I0,I1,I2,.....In, sont transmises aux entrées de traitement 53 du microprocesseur 60 et stockées dans la mémoire vive 61. L'algorithme situé dans la mémoire morte 63 effectue des traitements des
15 images stockées dans la mémoire vive 61 consistant à essayer successivement tous les recouvrements possibles entre les images I0 et I1 et d'affecter à chaque essai un coefficient de corrélation. Le meilleur coefficient de corrélation, indiquera au système la position de recouvrement optimum des deux images I0 et I1 et l'opération sera recommencée avec
20 l'image suivante I2 fournie par le capteur 50 au microprocesseur 60 et ainsi de suite jusqu'à la reconstitution complète de l'empreinte digitale.

Différentes stratégies de corrélation peuvent être utilisées afin de reconstituer l'image complète de l'empreinte digitale à partir des images partielles successives de cette même empreinte. Par exemple, une stratégie
25 de corrélation consiste à comparer les niveaux de tous les éléments sensibles de chacune des deux premières images I0 et I1 successives pour chaque cas de recouvrement possible de deux images.

La figure 8 montre un premier essai effectué par l'algorithme de traitement du système dans une première position P1 de superposition des
30 deux images I0 et I1, sur une zone Z0 commune aux deux images. Le système de traitement compare les niveaux de éléments sensibles de chaque image I0 et I1 situés aux mêmes points de la zone commune Z0 et si le nombre d'éléments sensibles dont les niveaux sensiblement identiques est inférieur à une valeur prédéterminée, le système modifie la position de
35 superposition des deux images vers une position suivante P2 (représentée

AML000085

13

à la figure 9) correspondant à une nouvelle zone de superposition Z1 des images I0 et I1 et le système effectue une nouvelle comparaison des niveaux des éléments sensibles des deux images I0 et I1 dans la zone Z1 et ainsi de suite pour des positions suivantes P3,....Pn des deux images
5 (représentée à la figure 10) jusqu'à ce que le nombre d'éléments sensibles de niveau sensiblement identiques situées aux mêmes points dans une zone de recouvrement commune Zn des deux images I0 et I1 soit supérieur à une valeur prédéterminée correspondant une identité probable des zones Zn des images respectives I0 et I1, dans la position Pn.

10 Une image résultante Ir1, représentée à la figure 10, des deux images I0 et I1 pourrait être une image issue d'une pondération entre les deux images I0 et I1 dans leur position de recouvrement optimum Pn, permettant d'améliorer la qualité de l'image résultante de superposition. L'image Ir1 est gardée dans la mémoire vive du microprocesseur pour la
15 suite du traitement.

L'image suivante I2 représentée à la figure 11 à l'instant t2 en sortie de capteur 50 est transmise au microprocesseur 60 qui est à son tour comparée à l'image résultante Ir1 de la même façon que précédemment permettant d'obtenir une image Ir2 , représentée à la figure 11, résultant de
20 la superposition de I0, I1 et I2 dans leur position optimum de recouvrement. Le processus se répète de la même façon jusqu'à l'obtention de l'image complète Irn de l'empreinte digitale 52, représentée à la figure 12.

L'algorithme de traitement du système, pourra tenir compte des résultats précédents à une nouvelle recherche de superposition optimale
25 entre deux images successives pour prédire quelle sera la position de recouvrement la plus probable pour l'image suivante par le fait que la probabilité que le déplacement relatif du doigt par rapport au capteur soit sensiblement constant est très élevée. Ceci accélère notablement la vitesse de traitement et de reconstruction de l'image complète Irn de l'empreinte
30 digitale en évitant des calculs inutiles.

L'exemple de reconstruction de l'image complète n'est pas limitatif et d'autres stratégies de reconstruction de l'empreinte digitale complète, peuvent être envisagées.

En particulier, dans ce qui précède on a considéré pour simplifier
35 que l'image de l'empreinte digitale était reconstituée point par point à partir

14

d'images partielles également obtenues point par point. Mais, étant donné que ces images doivent servir ultérieurement à une identification et que cette identification sera en général effectuée par des algorithmes de reconnaissance de forme qui peuvent utiliser des traitements d'extraction de
5    contours, de vectorisation de ces contours, etc..., on peut également envisager que la reconstitution d'image soit directement effectuée sous forme d'ensembles de lignes de contours ou de vecteurs représentant ces contours. L'image utile d'une empreinte digitale est en effet un ensemble de contours correspondant aux crêtes des sillons de cette empreinte. Pour
10    l'authentification, on comparera les ensembles de contours détectés à des ensembles de contour préenregistrés correspondant à un individu à authentifier. Les ensembles de contours pourront alors être stockés sous forme de tables de vecteurs décrivant ces contours.

On peut donc effectuer un traitement d'extraction de contours
15    et/ou une vectorisation directement sur une image partielle, et effectuer ensuite des corrélations sur les contours ou vecteurs d'images partielles successifs pour regrouper les images partielles et établir une image complète directement sous forme d'ensembles de contours ou ensembles de vecteurs.

20    Cette solution permet d'éviter une reconstitution d'image point par point alors que cette image devra de toutes façons être transformée en ensemble de contours.

Dans d'autre réalisations, la largeur du capteur peut être inférieure à la largeur du doigt, diminuant ainsi encore sa surface, il suffira
25    de balayer la totalité de l'empreinte digitale avec une vitesse adéquate, le système effectuant la reconstitution de l'image complète.

AML000087

15

## REVENDICATIONS

1. Système de lecture d'une empreinte digitale caractérisé en ce qu'il comporte des moyens de lecture de l'empreinte digitale lorsque le doigt (11,53) et un capteur (10,50) appartenant aux moyens de lecture sont en contact et dans un mouvement relatif de glissement du capteur (10,50) et du doigt (11,53) l'un par rapport à l'autre et des moyens pour reconstituer une image de l'empreinte (52) à partir d'images partielles (I0,I1,I2,....In) obtenues *pendant ce mouvement.*

2. Système de lecture d'empreinte digitale selon la revendication 1, caractérisé en ce que le capteur (10,50) est fixé sur un bâti, le mouvement relatif du doigt (11,53) par rapport au capteur étant effectué par glissement du doigt sur le capteur.

3. Système de lecture d'empreinte digitale selon la revendication 1, caractérisé en ce que des moyens sont prévus pour déplacer le capteur par rapport à une surface sur laquelle peut être posé un doigt, le *mouvement relatif du doigt par rapport au capteur résultant du glissement du* capteur par rapport au doigt.

4. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 3, caractérisé en ce que le capteur (10,50) est un circuit intégré comportant une matrice d'éléments sensibles intégrés sur un substrat (20) semi-conducteur dans lequel est intégré un multiplexeur permettant de mesurer individuellement un signal engendré dans la couche active du capteur lors du déplacement relatif du doigt et du capteur, l'un par rapport à l'autre.

5. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 5, caractérisé en ce que le capteur comporte une couche active (30) sensible à la pression et/ou à la température.

6. Système de lecture d'empreinte digitale selon la revendication 5, caractérisé en ce que la couche active (30) du circuit intégré est une couche pyro/piézo-électrique permettant de capter un motif matriciel de pression et/ou de température créé par l'empreinte digitale.

7. *Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 4, caractérisé en ce que les éléments sensibles du*

                                                    AML000088

16

capteur sont constitués par des éléments capacitifs permettant de capter le motif matriciel de capacité créé par les sillons du doigt.

8. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 4 à 7; caractérisé en ce que l'élément sensible du
5   capteur est de forme rectangulaire.

9. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 8, caractérisé par le fait que la surface du capteur est plus petite que la surface de l'empreinte digitale et ne délivre que des images partielles de l'empreinte digitale complète.

10   10. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 9, caractérisé en ce que le capteur se présente sous forme d'une barrette de longueur beaucoup plus petite que sa largeur.

11. Système de lecture d'empreinte digitale selon la revendication
15   10, caractérisé en ce que la largeur de la barrette est sensiblement égale à celle d'un doigt.

12. Système de lecture d'empreinte digitale selon l'une des revendications 10 et 11, caractérisé en ce que le capteur a une surface active dont la largeur est comprise entre environ 1cm et 2,5 centimètres et
20   sa longueur inférieure à 5 millimètres.

13. Système de lecture d'empreinte digitale selon l'une quelconque des revendications 1 à 12, caractérisé en ce que le capteur comporte une seule ligne d'éléments sensibles.

14. Système de lecture d'empreinte digitale selon l'un quelconque
25   des revendications 1 à 13, caractérisé en ce qu'il comporte, pour la reconstruction d'une image d'empreinte (52), un circuit électronique avec un microprocesseur (60), une mémoire morte (63) programmée avec un algorithme permettant de reconstruire l'image complète de l'empreinte et l'identification de la personne et une mémoire vive (61).

30   15. Système de lecture d'empreinte selon l'une des revendications 1 à 14, caractérisé en ce qu'il comporte des moyens de traitement d'images partielles fournies par le capteur, permettant notamment de fournir des contours de lignes de crête d'empreintes digitales, les moyens de reconstitution d'image établissant à partir de ces contours une image globale
35   d'empreinte sous forme de contours.

AML000089

17

       16. Système de lecture d'empreinte digitale selon la revendication 15, caractérisé en ce que les moyens de traitement d'images partielles tiennent compte des résultats précédents à une nouvelle recherche de superposition optimale entre deux images successives pour prédire quelle

5    sera la position de recouvrement la plus probable pour l'image suivante par le fait que la probabilité que le déplacement relatif du doigt par rapport au capteur soit sensiblement constant, est très élevée.

AML000090

1/4



FIG.1

FIG.2



FIG.3

AML000091

214



# FIG.4



# FIG.5

AML000092

3/4



FIG.6



FIG.7





FIG.8



FIG.9



FIG.10

AML000093

4/4



# FIG.11



# FIG.12

AML000094

Docket No. 154-2548-2

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF: Jean-Francois MAINGUET    GROUP ART UNIT:

SERIAL NUMBER: NEW APPLICATION    EXAMINER:

FILED: HEREWITH

FOR: FINGERPRINT-READING SYSTEM

INFORMATION DISCLOSURE STATEMENT UNDER 37 C.F.R. 1.97

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:
    Applicant(s) wish to disclose the following information.

REFERENCES
☒    The Applicant(s) wish to make of record the references [some of which are cited in the attached French Search Report] listed on the attached Form PTO-1449. Copies of the listed references are attached, where required, as are either statements of relevancy or any readily available English translations of pertinent portions of any non-English language references.

☐    A check is attached in the amount required under 37 CFR § 1.17(p).

RELATED CASES
☐    Attached is a list of applicant's pending applications or issued patents which may be related to the present application. A copy of the patent(s) is attached along with PTO 1449.

☐    A check is attached in the amount required under 37 CFR § 1.17(p).

CERTIFICATION
The undersigned certifies that

☐    each item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of this statement.

☐    no item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application or, to the knowledge of the undersigned, having made reasonable inquiry, was known to any individual designated in 37 CFR § 1.56(c) more than three months prior to the filing of this statement.

PETITION
☐    Applicant(s) hereby request consideration of the attached information. A check is attached in the amount of the Petition fee required under 37 CFR § 1.17(i)(1).

DEPOSIT ACCOUNT
☒    Please charge any additional fees for the papers being filed herewith and for which no check is enclosed herewith, or credit any overpayment to deposit account No. 15-0030. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.

Marvin J. Spivak
Registration No. 24,913    C. Irvin McClelland
                           Registration Number 21,124

Fourth Floor
1755 Jefferson Davis Highway
Arlington, Virginia 22202
(703) 413-3000
Fax No. (703) 413-2220
(OSMMN 1/97)

AML000095

Docket Number: 154-2548-2

Serial Number: NEW APPLICATION

Filed: HEREWITH

### STATEMENT OF RELEVANCY

**Reference AA of PTO 1449**:

    The reference discloses an optical system and not a pyroelectric or piezoelectric system.

AML000096

SHEET ___1___ OF ___1___

| Form PTO 1449 (Modified) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 154-2548-2 | | SERIAL NO. NEW APPLICATION | |
|---|---|---|---|---|---|
| LIST OF REFERENCES CITED BY APPLICANT (Use Several Sheets if Necessary) | | APPLICANT Jean-Francois MAINGUET | | | |
| | | FILING DATE HEREWITH | | GROUP | |

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AA | 5,548,394 | 08/20/96 | GILES, et al. | | | |
| ℐₘ | AB | 4,933,976 | 06/12/90 | FISHBINE, et al. | 382 | 4 | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| | | DOCUMENT NUMBER | DATE | COUNTRY | TRANSLATION YES | NO |
| ℐₘ | AL | 2 674 051 | 09/18/92 | FRANCE | | X |
| | AM | | | | | |
| | AN | | | | | |
| | AO | | | | | |
| | AP | | | | | |

| OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.) | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER   _Jm Ji Cowo_ | DATE CONSIDERED   _10·15·99_ |
|---|---|

*EXAMINER: Initial if reference is considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

AML000097



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
           Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/870,002 | 06/05/97 | MAINGUET | J | 154-2548-2 |

```
                        LM01/0807
OBLON SPIVAK MCCLELLAND MAIER AND
NEUSTADT
FOURTH FLOOR
1755 JEFFERSON DAVIS HIGHWAY
ARLINGTON VA 22202
```

| EXAMINER |
|---|
| HAMDAN WASSEEM |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2723 | 4 |

**DATE MAILED:**   08/07/98

**Please find below and/or attached an *Office* communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 1998-437-638/80022

1- File Copy

AML000098

| *Office Action Summary* | Application No.<br>08/870,002 | Applicant(s)<br>Mianguet, Jean-Francois |
|---|---|---|
| | Examiner<br>Wasseem H. Hamdan | Group Art Unit<br>2723 |

☐ Responsive to communication(s) filed on _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ *3* ____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-16* _____ is/are pending in the application.

    Of the above, claim(s) *5-16* _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-4* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☒ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☒ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☒ All ☐ Some* ☐ None  of the CERTIFIED copies of the priority documents have been

        ☒ received.

        ☐ received in Application No. (Series Code/Serial Number) _____ .

        ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____ *3* _____

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

*--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---*

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-95)                    Office Action Summary                    Part of Paper No.    4

Serial Number: 08/870002                                                    Page 2

Art Unit: 2723

## DETAILED ACTION

### Specification

### Claim Rejections - 35 USC § 112

1.    Claim 5 and 6 are rejected under 35 U.S.C. 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention. Claim 5 can not depend on itself.

### Abstract

2.    Applicant is reminded of the proper language and format for
an abstract of the disclosure.

The abstract should be in narrative form and generally
limited to a single paragraph on a separate sheet within the
range of 50 to 250 words.  It is important that the abstract not
exceed 250 words in length since the space provided for the
abstract on the computer tape used by the printer is limited.
The form and legal phraseology often used in patent claims, such
as "means" and "said," should be avoided.  The abstract should
describe the disclosure sufficiently to assist readers in
deciding whether there is a need for consulting the full patent
text for details.

The language should be clear and concise and should not
repeat information given in the title.  It should avoid using
phrases which can be implied, such as, "The disclosure concerns,"
"The disclosure defined by this invention," "The disclosure
describes," etc.

Serial Number: 08/870002                                              Page 3

Art Unit: 2723

3.   The abstract of the disclosure is objected to because on
line 1, and on line 8, the words "comprises" and "means" are being
used.  Correction is required.  See MPEP § 608.01(b).

### Multiple Dependent Claims

4.   Claims 5-16 are objected to under 37 CFR 1.75(c) as being in
improper form because a multiple dependent claim "cannot depend
from any other multiple dependent claim".  See MPEP § 608.01(n).
Accordingly, the claims 5-16 have not been further treated on the
merits.

### Suggestion

5. Regarding claim 7 the statement "to any of claims 1 to 4" be
changed to "to claim 1" Similarly for claims 7-16.

### Claim Rejections - 35 USC § 102

6. The following is a quotation of the appropriate paragraphs of
35 U.S.C. 102 that form the basis for the rejections under this
section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (e) the invention was described in a patent granted on an application for
> patent by another filed in the United States before the invention thereof
> by the applicant for patent, or on an international application by another
> who has fulfilled the requirements of paragraphs (1), (2), and (4) of

Serial Number: 08/870002                                          Page 4

Art Unit: 2723

section 371(c) of this title before the invention thereof by the applicant
for patent.

7. Claims 1, and 3 are rejected under 35 U.S.C. 102(e) as being
anticipated by Giles et al (Patent Number 5,548,394).

Regarding claim 1 Giles et al discloses a fingerprint-
reading system (see FIG. 2) comprising means for reading a
fingerprint when the finger and the sensor (see summary, line 63;
column 5, lines 25-28; column 40, lines 38-42) belonging to the
reading means are in contact and in a relative motion (see
summary column 1, lines 65; column 5, lines 16) of sliding of the
sensor (see summary column 1, line 63, column 8, line 7) and the
finger with respect to each other and means to reconstitute an
image of the fingerprint from partial images (see column 4, lines
55-65; and column 5, lines 15-23) obtained during this motion.

Regarding claim 2 Giles et al a fingerprint-reading system
(see FIG. 2, wherein the sensor is fixed to a frame (see FIG 2),
the relative motion of the finger with respect to the sensor (see
FIG. 5, column 1, lines 59-67; column 5, lines 15-16) being done
by sliding of the finger on the sensor (see FIG. 4; summary
column 1, line 63, column 8, line 7).

                                          AML000102

Serial Number: 08/870002                                                Page 5

Art Unit: 2723


Regarding claim 3 Giles et al discloses a fingerprint-reading system (see FIG. 2) to shift the sensor with respect to a surface on which a finger may be place (see abstract).


### Claim Rejections - 35 USC § 103

8.   The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

9.   Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Giles et al. (US Patent Number 5,548,394) as applied to claims 1-3 above, and further in view of Edwards (US Patent Number 4,429,413).

Regarding claim 4 Giles et al. discloses the relative shift of the finger with respect to finger, but does not disclose the sensor is an integrated circuit comprising of sensitive elements. Edwards teaches the sensor is an integrated circuit (please see FIG. 5,6,7, and 9; column 2, lines 17-19) comprising a matrix of sensitive elements (FIG. 1, and FIG. 2) which there is integrated a multiplexer enabling the measurement of a signal (see abstract; column 1, lines 5-12; column 2, lines 5-9)  generated in the

Serial Number: 08/870002                                                Page 6

Art Unit: 2723

sensor during relative shift of the finger and the sensor (see
column 2, lines 64-68, column 3, lines 1-7; FIG 5, and FIG 6;
column 5, lines 61-68.

Therefore it would have been obvious to one skilled in the
art to incorporate the circuitry of Giles into an integrated
circuit as claimed and as taught by Edwards, because it would
provide the improvement wherein the fingerprint sensor for
transforming the information contained in the epidermal structure
of the finger into an electric output signal would not require an
intermediate conversion into optical information (see Edwards
column 2, lines 5-9). Further such modification would provide an
integrated fingerprint system which would have small dimensions,
be insensitive to mechanical influences, may easily be assembled
from commercially available components (see column 2, lines 11-
13), provides high sensibility and high reliability, and requires
minimum power (column 2, lines 17-18).

### Conclusion

10.    The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

U.S. Patent 5,548,394 to Giles et al. is further cited for
disclosing Scanning fingerprint reading.

Serial Number: 08/870002                                                    Page 7

Art Unit: 2723


Giles et al discloses a fingerprint-reading system (see FIG. 2) comprising partial image processing means to provide fingerprint image in the form of contours relating to claim 15.


U.S. Patent 5,689,576 to Schneider et al. is cited for disclosing Surface feature mapping using high resolution C-scan ultrasonography.


U.S. Patent 4,429,413 to Edwards is further cited for disclosing Fingerprint sensor, wherein the sensor has a active layer to pressure and/or to temperature (see abstract; summary of the invention) relating to claim 5; and

wherein the sensitive elements of the sensor are constitute by capacitive elements (see first figure in the abstract, FIG. 3) Relating to claim 7; and

wherein the sensitive elements of the sensor are constitute by capacitive elements (see first figure in the abstract, FIG. 3), and wherein the sensitive element of the sensor is rectangular (FIG. 1) relating to claim 8; and

wherein the width of the small bar is substantially equal to that of a finger (FIG. 1)relating to claim 11;


U.S. Patent 4,353,056 to Tsikos is cited for disclosing Capacitive fingerprint sensor relating to claim 7.

Serial Number: 08/870002                                    Page 8

Art Unit: 2723

U.S. Patent 5,587,533 to Schneider et al. is cited for
Surface feature mapping using high resolution C-scan
ultrasonography.

U.S. Patent 5,321,765 to Costello is cited for Method and
apparatus for verification identity.

Costello discloses a fingerprint-reading system comprising,
for the construction of an image of a fingerprint, an electronic
circuit with a microprocessor, a read-only memory programmed with
an algorithm enabling the reconduction of the complete image of
the fingerprint and the identification of the individual, and a
read-only memory (see column 6, lines 21-35; column 7, lines 15-
21; column 10, lines 14-26)related to claim 14.

U.S. Patent 4,394,773 to Ruell is cited for Fingerprint
sensor.

Ruell discloses a fingerprint-reading system wherein the
active layer of the integrated circuit is a pyroelectric /
piezoelectric layer (see abstract) related to claim 6.

U.S. Patent 4,385,831 to Ruell is cited for Device for
investigation of a finger relief.

Serial Number: 08/870002                                                    Page 9

Art Unit: 2723

U.S. Patent 5,177,802 to Fujimoto et al. is cited for
Fingerprint input apparatus.

U.S. Patent 5,546,471 to Merjanian is cited for Ergonomic
fingerprint reader apparatus.

U.S. Patent 5,596,454 to Hebert is cited for uneven surface
image transfer apparatus.

U.S. Patent 5,195,145 to Backus et al. is cited for
Apparatus to record epidermal topology.

U.S. Patent 5,745,555 to Mark is cited for System and method
using personal identification numbers and associated prompts for
controlling unauthorized access to a resource.

U.S. Patent 5,719,950 to Osten et al. is cited for Biometric
personal authentication system.

11. Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Wasseem H.
Hamdan whose telephone number is (703)305-3968.  The examiner can
normally be reached on Monday through Friday from 7:00A.M. to
3:30P.M.

AML000107

Serial Number: 08/870002                                          Page 10

Art Unit: 2723

     If attempts to reach examiner by telephone are unsuccessful,
the examiner's supervisor, Amelia Au, can be reached at (703)308-
6604.  The fax number for this Group is (703)308-5397.

     Any inquiry of a general nature or relating to the status of
this application or proceeding should be directed to the group
receptionist whose telephone number is (703)305-8576.

                                              AMELIA AU
                                          PRIMARY EXAMINER

wh

July 23,1998

| | | | | | |
|---|---|---|---|---|---|
| **Notice of References Cited** | Application No. 08/870,002 | | Applicant(s) Mianguet, Jean-Francois | | |
| | Examiner Wasseem H. Hamdan | | Group Art Unit 2723 | | Page 1 of 2 |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 5,548,394 | 03/16/95 | Giles et al. | 356 | 71 |
| B | 5,689,576 | 07/21/94 | Schneider At Al. | 382 | 124 |
| C | 4,429,413 | 07/30/81 | Edwards | 382 | 124 |
| D | 4,353,056 | 06/05/80 | Tsikos | 382 | 124 |
| E | 5,587,533 | 01/27/95 | Schneider et al | 73 | 614 |
| F | 5,321,765 | 01/21/92 | Costello | 382 | 125 |
| G | 4,394,773 | 07/21/80 | Ruell | 382 | 124 |
| H | 4,385,831 | 09/22/80 | Ruell | 356 | 71 |
| I | 5,177,802 | 03/04/91 | Fujimoto et al | 382 | 124 |
| J | 5,546,471 | 10/28/94 | Merjanian | 382 | 124 |
| K | 5,596,454 | 10/28/94 | Hebert | 382 | 124 |
| L | 5,195,145 | 02/26/91 | Backs et al. | 382 | 126 |
| M | 5,745,555 | 06/07/96 | Mark | 379 | 93.03 |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

    AML000109

| *Notice of References Cited* | Application No. 08/870,002 | | Applicant(s) Mianguet, Jean-Francois | | |
|---|---|---|---|---|---|
| | Examiner Wasseem H. Hamdan | | Group Art Unit 2723 | | Page 2 of 2 |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 5,719,950 | 08/30/95 | Osten et al. | 382 | 115 |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

U. S. Patent and Trademark Office
PTO-892 (Rev. 9-95)                    **Notice of References Cited**              Part of Paper No. __5__

FORM **PTO 948** (REV. 01-97)    U.S. DEPARTMENT OF COMME... ...-Patent and Trademark Office    Application No. _870002_

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filed (insert date) _6/5/97_ are:

A. _✓_ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. _____ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings whe necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   _____ Color drawing are not acceptable until petition is granted.
   Fig.(s)_____
   _____ Pencil and non black ink is not permitted. Fig(s)_____
2. PHOTOGRAPHS. 37 CFR 1.84(b)
   _____ Photographs are not acceptable until petition is granted,
   _____ 3 full-tone sets are required. Fig(s)_____
   _____ Photographs not properly mounted (must brystol board or photographic double-weight paper). Fig(s)_____
   _____ Poor quality (half-tone). Fig(s)_____
3. TYPE OF PAPER. 37 CFR 1.84(e)
   _____ Paper not flexible, strong, white and durable.
   Fig.(s)_____
   _____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin)
   _____ Mylar, vellum paper is not acceptable (too thin).
   Fig(s)_____
4. SIZE OF PAPER. 37 CFR 1.84(F): Acceptable sizes:
   _____ 21.0 cm by 29.7 cm (DIN size A4)
   _____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   _____ All drawings sheets not the same size.
   Sheet(s)_____
5. MARGINS. 37 CFR 18.4(g): Acceptable margins:
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   _____ Margins not acceptable. Fig(s)_____
   _____ Top (T) _____ Left (L)
   _____ Right (R) _____ Bottom (B)
6. VIEWS. CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   _____ Views connected by projection lines or lead lines.
   Fig.(s)_____
   Partial views. 37 CFR 1.84(h)(2)
   _____ Brackets needed to show figure as one entity.
   Fig.(s)_____
   _____ Views not labeled separately or properly.
   Fig.(s)_____
   _____ Enlarged view not labeled separately or properly.
   Fig.(s)_____

7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)
   _____ Hatching not indicated for sectional portions of an object.
   Fig.(s)_____
   _____ Sectional designation should be noted with Arabic or Roman numbers. Fig.(s)_____
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   _____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig.(s)_____
   _____ Views not on the same plane on drawing sheet. Fig.(s)_____
9. SCALE. 37 CFR 1.84(k)
   _____ Scale not large enough to show mechansim with crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig.(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
    _____ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line quality).
    Fig.(s)_____
11. SHADING. 37 CFR 1.84(m)
    _____ Solid black areas pale. Fig.(s)_____
    _____ Solid black shading not permitted. Fig.(s)_____
    _____ Shade lines, pale, rough and blurred. Fig.(s)
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
    37 CFR 1.48(p)
    _____ Numbers and reference characters not plain and legible.
    Fig.(s)_____
    _____ Figure legends are poor. Fig.(s)_____
    _____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(3) Fig.(s)_____
    _____ Engligh alphabet not used. 37 CFR 1.84(p)(3) Fig.(s)_____
    _____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig.(s)_____
13. LEAD LINES. 37 CFR 1.84(q)
    _____ Lead lines cross each other. Fig.(s)_____
    _____ Lead lines missing. Fig.(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.48(t)
    _____ Sheets not numbered consecutively, and in Ababic numerals beginning with number 1. Fig.(s)_____
15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    _____ Views not numbered consecutively, and in Arabic numerals. beginning with number 1. Fig.(s)_____
16. CORRECTIONS. 37 CFR 1.84(w)
    _____ Corrections not made from PTO-948 dated _____
17. DESIGN DRAWINGS. 37 CFR 1.152
    _____ Surface shading shown not appropriate. Fig.(s)_____
    _____ Solid black shading not used for color contrast.
    Fig.(s)_____

COMMENTS

REVIEWER _____ DATE _6/20/97_ TELEPHONE NO. _703 305 8464_.

ATTACHMENT TO PAPER NO._____

Docket No.:  0154-2148-2

IN THE UNITED STATES PATENT & TRADEMARK OFFICE

IN RE APPLICATION OF:                      :

Jean-Francois MAINGUET                       GROUP ART UNIT:   2723

SERIAL NO:   08/870,002

FILED:   JUNE 5, 1997                      :        EXAMINER:   HAMDAN WASSEEM

FOR:  FINGERPRINT-READING              :
      SYSTEM

RECEIVED

NOV 1 3 1998

AMENDMENT

ASSISTANT COMMISSIONER FOR PATENTS                    Group 2700
WASHINGTON, D.C.  20231

SIR:

In response to the Patent Office Action dated August 7, 1998, please amend the

above-identified application as follows:

IN THE ABSTRACT

Page 22, line 2, change "comprises" to --includes--;

        line 9, delete all after "system" and insert therefore --reconstitutes--;

        line 10, delete "reconstitute";

        line 12, delete all after the period;

        lines 13-14, delete in their entirety.

11/10/1998 TLUU11   00000043 08870002
01 FC:103                    418.00 OP              IN THE CLAIMS

Cancel Claims 1 and 9.

-2-

Please add new Claim 17 as follows:

--17.  A fingerprint-reading system comprising:

    means for reading a fingerprint including a sensor for providing a series of partial

images of a finger ~~during~~ relative sliding contact between said sensor and said finger, said
*obtained directly from*

sensor having a surface area smaller than a surface area of said fingerprint to be read;

    means for reconstituting a total image of the fingerprint from said partial images.--

Claim 2, line 2, change "1" to --17--.

Claim 3, line 2, change "1" to --17--.

Claim 4, line 2, change "1 to 3" to --1, 2 or 3--.

Claim 5, line 2, change "1 to 5" to --17, 2 or 3--.

Claim 7, lines 1-2, delete "any of the claims 1 to 4" and insert therefore --any one of
the claims 2, 3 or 17--.

Claim 8, lines 1-2, delete "any of the claims 4 to 7" and insert therefore --claim 4--.

Claim 10, lines 1-2, delete "any of the claims 1 to 9" and insert therefore --any one of
the claims 2, 3 or 17--.

Claim 12, lines 1-2, change "according to one of the claims 10 and 11" to --according
to claim 10--.

Claim 13, line 2, change "1 to 12" to --2, 3 or 17--.

Claim 14, lines 1-2, change "any of the claims 1 to 13" to --any one of the claims 2, 3
or 17--.

Claim 15, lines 1-2, change "any of the claims 1 to 14" to --any one of the claims 2, 3
or 17--.

AML000113

-3-

Claim 16, line 2, change "claims 15" to --claim 15--.

## REMARKS

Favorable reconsideration and allowance of this application is respectfully requested in view of the above amendment and the discussion below.

Applicant's invention is addressed to an improved fingerprint-reading system which enables the use of a surface area which is much smaller than the prior art and which can provide accurate reading, including a complete image of the fingerprint based on a series of partial adjacent or overlapping images.

According to Applicant's invention, a finger moves with respect to a small sensor. In one embodiment the sensor is an elongated bar, the length of which (referred to as "width" in the specification) is approximately equal to the width of a finger and the other dimension of which (referred to as "length" in the specification) is substantially smaller than the first dimension of the bar. The finger makes sliding contact with the sensor bar and a series of partial images is obtained as either the bar slides across the finger or the finger slides across the bar.

Note that the specification unusually refers to "length" for the smaller dimension for the purpose of defining a length in the general direction of displacement of the finger.

The outstanding Patent Office Action contains an objection to the abstract which has been corrected by the above amendment as well as an objection to the multiple dependent claims which has been addressed by the above amendment to the claims which now provide a proper multiple dependent claim format.

AML000114

-4-

Claims 1 and 3 were rejected under 35 U.S.C. § 102 as being anticipated by the reference to <u>Giles</u> (U.S. Patent No. 5,548,394) for the reasons indicated at item 7 on page 4 and 5 of the Patent Office Action. Claim 4 has been rejected under 35 U.S.C. § 103 as unpatentable over <u>Giles</u> in view of <u>Edwards</u> (U.S. Patent No. 4,429,413) for the reasons indicated at item 9 on pages 5 and 6 of the Patent Office Action.

In response to these rejections, Applicant has canceled claim 1 and added a new claim 17 which provides a structure which as a whole is not shown or disclosed or made obvious by the references or their combination.

The new independent claim 17 recites a sensor and that the reading means provides a series of partial images obtained during a relative sliding contact between the sensor and the finger. This is clearly shown in the Figures 1-2 and 5-12 wherein as the finger slides across the sensor (in the form of a bar) a series of partial images $i_o$-$i_n$ at time periods $t_o$-$t_n$ are formed and subsequently there is recited a means for reconciling these images to form the reconstituted total image of the fingerprint as shown in Figure 12.

The reference to <u>Giles</u> is a fingerprint reader using a prism 10 and scanning mirrors to provide the reading. In the embodiments of the '394 patent there is no sensor in contact with a finger, with the sensor having a surface area smaller than a surface area of a fingerprint to be read, as defined in independent Claim 17, i.e. a sliding movement.

The only motion attributed to the finger is the rolling motion across the platen at a given position. These "roll prints" result from the finger rolling across the platen surface <u>about</u> the longitudinal axis of the finger which is vastly different than the features of the Claim 17.

AML000115

-5-

Therefore Applicant submits that the claimed invention of the independent Claim 17 provides for a particular kind of sliding control which is not shown by the reference to <u>Giles</u>. Finally, there is a series of partial images which are used in conjunction with the means for reconstituting the image to form the final image as also claimed in the independent Claim 17.

The various features with regard to the sensor and the length and width of the sensor bar are detailed in the dependent claims. These features are also not shown or disclosed or made obvious by the reference to <u>Giles</u>.

With respect to the reference to <u>Edwards</u> (U.S. Patent No. 4,429,413) Applicant submits that there is also no showing in <u>Edwards</u> with respect to the above-discussed claim features existing in the independent Claim 17 so that no combination of <u>Giles</u> and <u>Edwards</u> would provide the claimed sensor for providing a plurality of partial images based on relative sliding contact between the width of the sensor and the finger.

Therefore, in view of the changes to the claim structure to obviate the rejections under 35 U.S.C. § 112 and to correct the multiple dependent feature as well as the submission of the changes to the abstract to overcome the Examiner's objections and particularly in view of the newly added sole independent Claim 17 which defines a structure which as whole is not

AML000116

-6-

shown or disclosed or made obvious by the references, Applicant respectfully requests that

this application containing Claims 2-8 and 10-17 be allowed and be passed to issue.

Respectfully submitted,

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.

Gregory J. Maier
Registration No. 25,599
Vincent J. Sunderdick
Registration No. 29,004
Attorneys of Record

1755 Jefferson Davis Highway
Fourth Floor
Arlington, Virginia 22202
(703) 413-3000
Facsimile (703) 413-2220
GJM:VJS:djn:jfb
I:\atty\VJS\01542548.am.wpd

Docket No.  0154-2548-2

IN RE APPLICATION OF:  Jean-Francois MAINGUET

SERIAL NO:  08/870,002

FILED:  JUNE 5, 1997

FOR:  FINGERPRINT-READING SYSTEM

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

RECEIVED

NOV 1 3 1998

Group 2700

SIR:

Transmitted herewith is an amendment in the above-identified application.

☐  No additional fee is required

☐  Small entity status of this application under 37 C.F.R. §1.9 and §1.27 has been established by a verified statement previously submitted.

☐  Small entity status of this application under 37 C.F.R. §1.9 and §1.27 has been established by a verified statement submitted herewith.

☐  Additional documents filed herewith:

The Fee has been calculated as shown below:

| CLAIMS | CLAIMS REMAINING | | HIGHEST NUMBER PREVIOUSLY PAID | NO. EXTRA CLAIMS | RATE | CALCULATIONS |
|---|---|---|---|---|---|---|
| TOTAL | 39 | MINUS | 20 | 19 | × $22 = | $418.00 |
| INDEPENDENT | 1 | MINUS | 3 | 0 | × $82 = | $0.00 |
| | | ☐  MULTIPLE DEPENDENT CLAIMS | | | + $270 = | $0.00 |
| | | TOTAL OF ABOVE CALCULATIONS | | | | $418.00 |
| | | ☐  Reduction by 50% for filing by Small Entity | | | | $0.00 |
| | | ☐  Recordation of Assignment | | | + $40 = | $0.00 |
| | | | | | TOTAL | $418.00 |

■  A check in the amount of  **$418.00**  is attached.

■  Please charge any additional Fees for the papers being filed herewith and for which no check is enclosed herewith, or credit any overpayment to deposit Account No. 15-0030. A duplicate copy of this sheet is enclosed.

■  If these papers are not considered timely filed by the Patent and Trademark Office, then a petition is hereby made under 37 C.F.R. §1.136, and any additional fees required under 37 C.F.R. §1.136 for any necessary extension of time may be charged to Deposit Account No. 15-0030. A duplicate copy of this sheet is enclosed.

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.

Gregory J. Maier
Registration No.  25,599

Vincent J. Sunderdick
Registration No.  29,004

Fourth Floor
1755 Jefferson Davis Highway
Arlington, Virginia 22202
Tel. (703) 413-3000
Fax. (703) 413-2220
(OSMMN 10/98)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/870,002 | 06/05/97 | MAINGUET            J | 154-2548-2 |

```
                              LM01/0201
OBLON SPIVAK MCCLELLAND MAIER AND
NEUSTADT
FOURTH FLOOR
1755 JEFFERSON DAVIS HIGHWAY
ARLINGTON VA 22202
```

| EXAMINER |
|---|
| FREDERICK, G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2723 | 6 |

DATE MAILED:   02/01/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

1- File Copy

AML000119

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Office Action Summary** | 08/870,002 | Mainguet | |
| | Examiner | Group Art Unit | |
| | Gilberto Frederick | 2723 | |

☒ Responsive to communication(s) filed on _Nov 9, 1998_ _____ .

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____*3*____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _2-8 and 10-17_ _____ is/are pending in the application.

　　Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _2-8 and 10-17_ _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

　　☐ All ☐ Some* ☐ None　of the CERTIFIED copies of the priority documents have been

　　　　☐ received.

　　　　☐ received in Application No. (Series Code/Serial Number) _____ .

　　　　☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

　　*Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-95)　　　　　　　　　　**Office Action Summary**　　　　　　　　Part of Paper No. __6__

AML000120

Application/Control Number: 08/870,002                                    Page 2

Art Unit:

## DETAILED ACTION

### Claim Rejections - 35 USC § 102

1.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

2.    Claims 17, 2, and 3 are rejected under 35 U.S.C. 102(e) as being anticipated by U.S.

Patent 5,548,394 to Giles et al.

As to Claims 17, 2, and 3, the rejections are maintained as in the rejections for Claims 1-3

in Paragraph 7 of Paper# 4, dated August 7, 1998. The rejection for the new Claim 17 is the

same as the rejection for Claim 1 in Paragraph 7 of Paper# 4.

### Claim Rejections - 35 USC § 103

3.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Application/Control Number: 08/870,002                                                   Page 3

Art Unit:

4.      Claim rejected under 35 U.S.C. 103(a) as being unpatentable over Giles and further in

view of U.S. Patent 4,429,413 to Edwards.

As to Claim 4, the rejection is maintained as in Paragraph 9 of Paper# 4, dated August 7,

1998.

As to Claim 5, Edwards teaches a fingerprint-reading system wherein the sensor has an

active layer sensitive to pressure and/or to temperature (Abstract).

As to Claim 6, Edwards teaches a fingerprint-reading system wherein the active layer of

the integrated circuit is a pyroelectric/piezoelectric layer enabling the sensing of a matrix pattern

of pressure and/or temperature created by the fingerprint (Figure 8 and Column 2, lines 46-57).

As to Claim 7, Edwards teaches a fingerprint-reading system wherein the sensitive

elements of the sensor are constituted by capacitive elements enabling the sensing of the matrix

pattern of capacitance created by the lines of the finger (Column 7, lines 27-41).

As to Claim 8, Edwards teaches a fingerprint-reading system wherein the sensitive element

of the sensor is rectangular [See Figure 1 where the contact surface 14 represents the element

where charges are induced at the upper and lower surfaces of the crystal layer (also see Column 4,

line 67 - Column 5, line 1); and Column 3, lines 44-47].

As to Claim 10, Edwards teaches a fingerprint-reading system wherein the sensor takes

the form of a small bar with a length far smaller than its width (Figure 1).

As to Claim 11, Edwards teaches a fingerprint-reading system wherein the width of the

small bar is substantially equal to that of a finger (Figure 1).

Application/Control Number: 08/870,002                                    Page 4

Art Unit:

As to Claim 12, Edwards teaches a fingerprint-reading system wherein the sensor has an active surface whose width ranges from about 1 centimeter to 2.5 centimeters and whose length is smaller than 5 millimeters (Column 3, lines 44-47).

As to Claim 13, Giles teaches a fingerprint-reading system wherein the sensor comprises only one row of sensitive elements (Column 1, lines 62-63).

As to Claim 14, Edwards teaches a fingerprint-reading system comprising the reconstruction of an image of a fingerprint (Column 4, lines 18-19), an electronic circuit with a microprocessor, a read-only memory programmed with an algorithm enabling the reconstruction of the complete image of the fingerprint and the identification of the individual, and a read-only memory (Column 4, lines 31-33).

As to Claim 15, Giles teaches a fingerprint-reading system comprising partial image processing means provided by the sensor, making it possible in particular to provide contours of fingerprint ridge lines, the image reconstitution means setting up, on the basis of these contours, a total fingerprint image in the form of contours (Column 3, lines 18-25; Column 4, lines 55-65; Column 5, lines 15-23).

As to Claim 16, Giles teaches a fingerprint-reading system wherein the partial image-processing means take account of the results preceding a new search for optimal superimposition between two successive image to predict the most probable position of overlapping for the next image by the fact that there is a very high probability that the relative shift of the finger with respect to the sensor will be substantially constant (Column 4, lines 52-65).