Edward G. Poplawski (SBN 113590)
*epoplawski@sidley.com*
Denise L. McKenzie (SBN 193313)
*dmckenzie@sidley.com*
Franklin D. Kang (SBN 192314)
*fkang@sidley.com*
Olivia M. Kim (SBN 228382)
*okim@sidley.com*
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone:     (213) 896-6000
Facsimile:      (213) 896-6600

**Attorneys For Plaintiffs**
Atmel Corporation;
Atmel Switzerland;
Atmel France; and
Atmel SARL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ATMEL CORPORATION, a Delaware corporation; ATMEL SWITZERLAND, a corporation; ATMEL FRANCE, a corporation; and ATMEL SARL, a corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AUTHENTEC, INC., a Delaware corporation,<br><br>Defendant | Case No. C 06-02138 CW (EDL)<br>Case No. C 07-03331 CW<br><br>**ATMEL'S NOTICE OF MOTION AND MOTION TO STRIKE THE DECLARATION OF DR. ROGER D. MCWILLIAMS**<br><br><u>Hearing</u><br>Date:         Thursday, May 1, 2008<br>Time:        2:00 PM<br>Location:   Courtroom 2, 4th Floor<br>Judge:       Hon. Claudia Wilken |

**<u>REDACTED</u>**

LA1 1155922v.1

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A. Unmodified AuthenTec Sensors In Normal Use. ............................................... 2

    B. Dr. McWilliams' Three Experiments Using Modified AuthenTec Sensors And Abnormal Operating Conditions. ....................................................................... 4

III. ARGUMENT .................................................................................................................. 5

    A. The Court Is The Gatekeeper Tasked With Excluding Unhelpful And Unreliable Expert Testimony. ............................................................................. 5

    B. The McWilliams Declaration Is Unhelpful To The Trier Of Fact. ..................... 5

        1. Expert Testimony Is Not Helpful If It Does Not Comport With The Governing Substantive Standard. ............................................................ 5

        2. Dr. McWilliams' Three Methods Flaunted The Controlling Substantive Standard Because They Relied On Modified Sensors Operated Under Abnormal Conditions. ............................................... 7

        3. Dr. McWilliams Arbitrarily Excludes The Drive Ring From The Sensors. .................................................................................................. 9

    C. The McWilliams Declaration Presents Unreliable Testimony. ........................ 10

        1. Dr. McWilliams Has Not Offered Objective Evidence That His Three Experiments Utilize Reliable Methodologies. ........................... 11

        2. Dr. McWilliams Has Not Offered Objective Evidence That The Arbitrary Exclusion Of The Drive Ring From The Sensors Is A Reliable Methodology. ........................................................................ 12

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carnegie Mellon Univ. v. Three Rivers Biologicals, Inc.*
  55 F. Supp. 2d 1024 (N.D. Cal. 1999) .................................................................................. 10, 11

*Daubert v. Merrell Dow Pharma., Inc.*
  43 F.3d 1311 (9th Cir. 1994) ............................................................................................ 5, 10, 11

*Daubert v. Merrell Dow Pharma., Inc.*
  509 U.S. 579 (1993) ................................................................................................................ 5, 10

*Domingo v. T.K.*
  289 F.3d 600 (9th Cir. 2002) ....................................................................................................... 10

*DoorKing, Inc. v. Sentex Sys., Inc.*
  19 Fed. Appx. 872 (Fed. Cir. 2001) ............................................................................................... 6

*DSU Med. Corp. v. JMS Co., Ltd.*
  296 F. Supp. 2d 1140 (N.D. Cal. 2003) ......................................................................................... 6

*Golden Blount, Inc. v. Robert H. Peterson Co.*
  438 F.3d 1354 (Fed. Cir. 2006) ..................................................................................................... 6

*Hilgraeve Corp. v. McAfee Assoc., Inc.*
  224 F.3d 1349 (Fed. Cir. 2000) ..................................................................................................... 6

*Hilgraeve Corp. v. Symantec Corp.*
  265 F.3d 1336 (Fed. Cir. 2001) ..................................................................................................... 6

*Micro Chem., Inc. v. Lextron, Inc.*
  317 F.3d 1387 (Fed. Cir. 2003) ..................................................................................................... 5

*Stilwell v. Smith & Nephew, Inc.*
  482 F.3d 1187 (9th Cir. 2007) ................................................................................................. 5, 10

*Tech. Licensing Corp. v. Gennum Corp.*
  No. 3:01-4204, 2004 U.S. Dist. LEXIS 10604 (N.D. Cal. Mar. 26, 2004) ................................... 6

**Rules**

FED. R. EVID. 104(a) .................................................................................................................. 5

FED. R. EVID. 702 .................................................................................................................. 1, 5

**NOTICE OF MOTION AND MOTION**

Plaintiffs Atmel Corporation, Atmel Switzerland, Atmel France and Atmel SARL (collectively, "Atmel") respectfully submit this Notice of Motion and Motion to Strike the Declaration of Dr. Roger D. McWilliams (Dkt. No. 434). The hearing is set concurrently with the hearing for the parties' *Markman* and Summary Judgment Motions before the Honorable Claudia Wilken on May 1, 2008 at 2:00 p.m. in Courtroom 2, 4th Floor, in the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, or as soon thereafter as the parties may be heard.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the other evidence and declarations cited herein, the pleadings and records on file, the arguments and evidence presented at the hearing, and any other evidence that may be presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Atmel respectfully requests that the Court strike the Declaration of Dr. Roger D. McWilliams (Dkt. No. 434) pursuant to Federal Rule of Evidence 702.

**POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**

**I.   INTRODUCTION**

The Declaration of Roger D. McWilliams (Dkt. No. 434) (hereinafter the "McWilliams Declaration") should be excluded under Rule 702 because it is unhelpful to the trier of fact and unreliable. Patent law is clear: Infringement is determined by comparing the patent claims to unmodified products as they are normally used. Dr. McWilliams ignored both of these directives by substantially modifying the accused sensors and then testing them under highly abnormal operating conditions. Dr. McWilliams modified the sensors by: 1) disabling the drive ring—a key component; 2) inserting shims and dielectric materials over the drive ring; and 3) soldering wires to the drive ring. Dr. McWilliams' tests on the highly modified sensors should be excluded because they are not probative of infringement and are not helpful to the trier of fact.

Further, Dr. McWilliams' tests should be excluded even if he had used unmodified sensors because there is no objective indicia of the reliability of any of his methodologies.

Finally, Dr. McWilliams's tests should be excluded as unhelpful because he excluded the drive ring from his definition of "sensor," creating a result-driven rather than scientifically-valid conclusion.

## II. STATEMENT OF FACTS

AuthenTec submitted the McWilliams Declaration to support the assertion in its summary judgment motion that "the accused AuthenTec sensors do not include 'contact sensitive elements' within the definition proposed by Atmel."[1]

### A. Unmodified AuthenTec Sensors In Normal Use.

The accused AuthenTec sensors and their normal use are described in detail in Section VI.C of Atmel's Responsive *Markman* Brief and Summary Judgment Motion filed concurrently. Briefly, AuthenTec's sensors are "slide" or "swipe" fingerprint sensors that are operated by sliding, swiping, or pulling the finger over the sensor's surface.[2] AuthenTec's sensors include a drive ring.[3] When a user slides his finger over the sensor, the finger contacts the drive ring and the drive ring injects a small electrical radio frequency (RF) signal into the finger, which creates an electric field used to image fingerprints.[4] The AuthenTec sensors "will not work without the drive ring."[5] The drive ring is depicted in the following enlarged picture:

---

[1] Dkt. No. 430 (AuthenTec's *Markman* and Summary Judgment Motion) at 16:5-6.

[2] **Ex. I**, AES product technical data sheets. (All bolded and underlined exhibits ("**Ex.** ") are attached to the Declarations Of Denise L. McKenzie in support of Atmel's Opening and Responsive *Markman* and summary judgment briefs.)

[3] *See, e.g.,* **Ex. K**, 11/08/07 Sherlock Dep. Tr. at 230:17-24; **Ex. W** at AUTH-A 005737 (" ▓"); **Ex. Z** at AUTH-A 018407 (" ▓ ").

[4] *See, e.g.,* Ex. B to Sherlock Decl. (Dkt. No. 431); **Ex. Z** at AUTH-A 017764, AUTH-A 018407, and 018764 (Figure 301 Sensor Imaging Principle, " ▓ "); **Ex. V**, 11/08/07 Sherlock Dep. Tr. at 49:15-50:10.



During normal use, the finger is placed "flat" on the AuthenTec sensor "surface" while sliding the finger across it.[6] Normal use is illustrated in the following Finger Placement Guide for the exemplary AES1610 sensor, which flatly warns: "Do not lift finger off of the sensor while sliding."[7]




Indeed, an AuthenTec Product Specification Sheet states: "The finger must make simultaneous contact with both the **sensor matrix** and the **drive ring**."[8]

---

[5] AuthenTec's VP, Sherlock, admits that the "drive ring must be contacted physically or electrically." Dkt. No. 431, Sherlock Decl. at ¶ 7.

[6] See **Ex. Y**, 11/28/07 Stewart Dep. Tr. at 33:22-36:7; **Ex. V**, 11/08/07 Sherlock Dep. Tr. at 215:7-11.

[7] Peter Sherlock, AuthenTec's V.P. of Product Development, testified to the accuracy and importance of the information in this document. **Ex. V**, 11/08/07 Sherlock Dep. at 216-219.

[8] **Ex. X** at p. 8 (emphasis added). See also **Ex. W** at AUTH-A 021631 (AuthenTec Sensor User Guide instructing the user to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added). Although these documents are for area sensors, Mr. Setlak acknowledges that AuthenTec's area sensors use the same RF technology, drive ring and sensor matrix (a/k/a detection matrix). See Dkt. No. 432, Setlak Decl. at ¶ 2.

Atmel's Motion to Strike the Declaration
of Dr. Roger D. McWilliams                         3
C 06-02138 CW (EDL); C 07-03331

### B. Dr. McWilliams' Three Experiments Using Modified AuthenTec Sensors And Abnormal Operating Conditions.

The McWilliams Declaration describes three experiments purportedly performed "to test the [AuthenTec] sensors for contact sensitivity."[9] Before performing the three experiments, Dr. McWilliams stated that he "verified proper operation of the sensors to be tested by operating them under normal conditions." (McWilliams Decl. at ¶ 6.) However, his three experiments were conducted using modified AuthenTec sensors and under abnormal operating conditions.

In the first method (¶¶ 7-10), a "variable air gap" between the finger and the window ("protective layer") was made "by placing conducting shims of various thicknesses on the external drive ring attached to the AuthenTec product housing." The conducting shims raised the finger as it was swiped across the sensor so that the finger did not contact the "window" or "protective layer" in the center of the sensor. Four different total shim heights (13, 25, 38, and 51 microns) were tested.

In the second method (¶¶ 11-12), "a dielectric material 12.5 microns thick [was placed] over the entire fingerprint" and "[t]he radio frequency external excitation source [(*i.e.*, drive ring)] was wired to the finger without disturbing the dielectric material covering the fingerprint."

In the third method (¶ 13), the drive ring was disabled, a wire with a piece of copper foil at its end was connected to the RF transmitter that normally would have provided the RF signal to the now-disabled drive ring, and the copper foil was held, for example, in the **left** hand while fingers of the **right** hand were swept over the sensor. Additionally in the third method (¶ 14), the copper foil and the finger to be detected where then each covered with insulators and the finger swept over the sensor.

After conducting these experiments with modified sensors and under abnormal operating conditions, Dr. McWilliams concluded: "In all methods, I found that it was **possible** to identify fingerprints without any direct contact between the finger and the sensors."[10]

---

[9] Dkt. 434 at ¶ 4; *see also* **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 51:14-18 and 52:8-12. Dr. McWilliams tested exemplary AES1610 and AES2501 sensors provided by AuthenTec's counsel.

[10] Dkt. 434 at ¶¶ 2, 5 (emphasis added); *see also* **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 89:6-10 and 137:8-14.

**Atmel's Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

4

## III. ARGUMENT

### A. The Court Is The Gatekeeper Tasked With Excluding Unhelpful And Unreliable Expert Testimony.

The Court is the gatekeeper responsible for excluding expert testimony that does not meet the requirements of Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 597 (1993). The Court must determine at the outset if AuthenTec has provided a preponderance of proof that the McWilliams Declaration is admissible. *See id.* at 592 & n.10 (*citing* FED. R. EVID. 104(a)).

Testimony from a qualified expert is admissible under Rule 702 only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (1) "is based upon sufficient facts or data," (2) "is the product of reliable principles and methods," and (3) "applie[s] the principles and methods reliably to the facts of the case." Rule 702 thus "embodies the twin concerns of reliability and helpfulness." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (internal quotations omitted); *see also Daubert*, 509 U.S. at 597. "A court may exclude testimony that falls short of achieving either end." 482 F.3d at 1192.

### B. The McWilliams Declaration Is Unhelpful To The Trier Of Fact.

#### 1. Expert Testimony Is Not Helpful If It Does Not Comport With The Governing Substantive Standard.

The "helpfulness" prong focuses on the relevance or "fit" of the expert testimony to the issues of the case. *Daubert*, 509 U.S. at 591. To determine whether expert testimony is helpful, the Court "must look to the governing substantive standard." *Daubert v. Merrell Dow Pharma., Inc.*, 43 F.3d 1311, 1320-21 (9th Cir. 1994) (on remand) ("*Daubert II*") (excluding expert opinions because they proved at most that the defendant may have caused plaintiffs' injuries, not that the defendant more likely than not caused the plaintiffs' injuries, as required under California tort law); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003) (analyzing whether a damages expert's opinion was "legally erroneous" under patent damages law in order to determine its admissibility); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) ("Reliable methodology requires that the legal grounds used by an expert to calculate damages be

legally acceptable."), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006); *Tech. Licensing Corp. v. Gennum Corp.*, No. 3:01-4204, 2004 U.S. Dist. LEXIS 10604, at *31 (N.D. Cal. Mar. 26, 2004) (excluding expert's opinion on patent damages to the extent it utilized a damages multiplier that "fails to comport with applicable Federal Circuit law which nowhere sanctions the use of a multiplier as [the expert] employs").

The governing substantive standard for determining patent infringement requires comparison of the **unmodified** accused instrument used under **normal conditions** to the claim language. *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343-44 (Fed. Cir. 2001). In *Hilgraeve*, the parties disputed whether the accused anti-virus software inhibited the storage of infected electronic files. *Id.* at 1339. The defendant's expert conducted four tests to prove that storage was not inhibited, but the Federal Circuit disregarded all of the expert's tests because they utilized abnormal operating conditions and therefore were "not probative of infringement during **normal operation** of the accused products." *Id.* at 1343-1344 (emphasis added).[11] *See also Hilgraeve Corp. v. McAfee Assoc., Inc.*, 224 F.3d 1349, 1354 (Fed. Cir. 2000) (disregarding tests by defendant's expert that altered normal functioning of accused anti-virus software); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) ("[I]t matters not that the assembled device can be manipulated into a non-infringing configuration, because the instructions packaged with each device teach the infringing configuration and nothing in the record suggests that either Peterson or any end-user ignored the instructions or assembled the burners in a manner contrary to the instructions so as to form a non-infringing configuration.").[12]

---

[11] *See also id.* ("We agree that tests of an accused device under unusual conditions are not necessarily relevant to an infringement analysis. For example, in determining whether a product claim is infringed, we have held that an accused device may be found to infringe it if is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation. So too the sale of a device may induce infringement of a method claim, even if the accused device is capable of non-infringing modes of operation in unusual circumstances.")

[12] *See also DoorKing, Inc. v. Sentex Sys., Inc.*, 19 Fed. Appx. 872, 878 (Fed. Cir. 2001) (unpublished) (reversing summary judgment of non-infringement because defendant "has made no showing that its devices do not infringe … **in normal operation**" and "failed to submit evidence showing that [the conditions used in the non-infringement expert's experiments were] reached in **real world conditions**.") (emphasis added).

### 2. Dr. McWilliams' Three Methods Flaunted The Controlling Substantive Standard Because They Relied On Modified Sensors Operated Under Abnormal Conditions.

#### a. Dr. McWilliams Substantially Modified Sensors.

In Dr. McWilliams' three methods, sensors, including the drive ring, were modified "in several ways."[13] In method 1 (¶¶ 7-10 of the Declaration), Dr. McWilliams placed "conducting shims of various thicknesses on the external drive ring."[14] The shims were placed in pairs on opposite sides of the drive ring with a gap in-between and were in direct physical and electrical contact with the drive ring.[15] The shims created an air gap between the window and the finger.[16] In method 2 (¶¶ 11-12), the sensor was modified by soldering a wire to the drive ring and taping the wire to the finger so that "the RF source is always touching the finger" during operation.[17] In method 3 (¶ 13), the sensor was modified by entirely disabling the drive ring, attaching a wire to the internal RF transmitter of the sensor that previously supplied the RF signal to the now-disabled drive ring, and attaching a copper plate to the end of the wire so that it could be placed at a location on the body remote from the finger that was to be swiped.[18] In a variation on method 3 (¶ 14), a dielectric material was placed between the copper plate and the body.[19]

In normal use, the accused sensors do not have shims, dielectric materials, air gaps, or wires soldered to the drive ring, and the drive ring is not disabled. Dr. McWilliams' three methods therefore relied on radically modified sensors.

---

[13] **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 99:25-100:11; 105:7-15.

[14] *Id.* at 57:7-17; 113:13-20; 114:6-15.

[15] *Id.* at 116:20-117:20; 120:20-121:2.

[16] *Id.* at 113:13-20.

[17] *Id.* at 130:10-16; 131:17-132:1; 132:25-133:8; 138:3-11.

[18] *Id.* at 113:25-114:5.

[19] *Id.* at 134:18-135:3.

### b. Dr. McWilliams Conducted His Experiments Under Abnormal Operating Conditions.

Dr. McWilliams also utilized abnormal operating conditions in his three methods even though AuthenTec provided him with the same Finger Placement Guide illustrated above that teaches normal use of its swipe sensors.[20] Dr. McWilliams boasted that he prefers "not to rely on the guidance of others" when "doing my science."[21] Indeed, in method 1, he used a "standardize[d][] finger swipe force" of "10 gram-equivalent," but testified that he does not know if this force is representative of real-world conditions.[22] In method 2, he covered the entire finger with a dielectric layer (in this instance polyethylene plastic) so that the dielectric was between the finger and the sensor, including the drive ring.[23,24] In method 3, Dr. McWilliams contacted the wire (now the RF source by virtue of being connected to the internal RF transmitter with the drive ring disabled) to an area of the body remote from the finger to be swiped, for example the **left** hand while fingers of the **right** hand were swept over the sensor.[25]

During normal operation, a user does not utilize a standard swiping force, does not place dielectrics over their fingers, and does not contact the RF frequency source with a part of the body remote from the finger to be swiped. AuthenTec admits that the third method "is obviously not the normal method of using the AuthenTec devices," and Dr. McWilliams testified that he does not know what normal use of the sensors is and "might be surprised to see somebody using them exactly in some of the ways I've tested."[26]

---

[20] *Id.* at 101:3-102:13.

[21] *Id.*

[22] *Id.* at 108:16-109:7.

[23] *Id.* at 128:9-23; 129:7-130:3; Dkt. 434 at ¶ 11.

[24] Dr. McWilliams testified that the introduction of dielectric materials in methods 2 and 3 constitutes modification of the sensors. **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 99:14-24. Whether the Court considers addition of the dielectric layers a sensor modification or an abnormal use is irrelevant – in either sense the testing methodology strays from the controlling law.

[25] Dkt. 434 at ¶ 13.

[26] Dkt. 430 at 17 n.20; **Ex. NN**, 3/18/08 McWilliams Dep. Tr. at 98:16-99:12.

**Atmel's Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

8

1   In only one instance – Dr. McWilliams' verification of the sensor's proper operation
2   described in ¶ 6 of his Declaration – did he use an unmodified sensor in a normal fashion.[27]
3   Notably, Dr. McWilliams does not opine on the contact sensitivity of the unmodified sensors used in
4   a normal fashion as described in ¶ 6. Instead, he chose to opine on the basis of three experiments
5   involving modified sensors and abnormal operating conditions. Accordingly, his Declaration is
6   completely useless to the trier of fact.

### 3. Dr. McWilliams Arbitrarily Excludes The Drive Ring From The Sensors.

The drive ring is part of the AuthenTec sensors.[28] Dr. McWilliams, however, arbitrarily excluded the drive ring from what he considered the "sensor."[29] He testified that the drive ring and the sensor are separate things and that the drive ring is a "gold colored rectangle" located "above the sensor."[30] This proposition is at the core of his Declaration and deposition testimony. Thus, although AuthenTec claims in its summary judgment motion to adopt Atmel's claim construction, Dr. McWilliams excluded the surface of the drive ring from the "sensing surface" in his Declaration.[31] Specifically, Dr. McWilliams limited the sensing surface to the surface area of the window (i.e., the area corresponding to what he calls the "protective layer" on top of the detection matrix.)[32] This is clearly an error. Accordingly, Dr. McWilliams' Declaration is unhelpful to the trier of fact because it compares the claims to only a portion of the sensor AuthenTec actually sells rather than the entire device – an "intellectual" modification of the sensor.

---

[27] See **Ex. NN**, 3/18/08 McWilliams Dep. Tr. at 105:16-106:19.

[28] See, e.g., **Ex. K**, 11/08/07 Sherlock Dep. Tr. at 230:17-24; **Ex. W** at AUTH-A 005737 ("███████"); **Ex. Z** at AUTH-A 018407 ("███████").

[29] **Ex. OO**, RDW 00021, Dr. McWilliams' notes ("███████") (emphasis added).

[30] **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 104:6-105:2.

[31] Dkt. No. 430 at 16:4-13.

[32] Dkt. No. 434 at ¶¶ 10, 11, and 14.

### C. The McWilliams Declaration Presents Unreliable Testimony.

The "reliability" prong focuses on the soundness of the expert's methodology. *Stilwell*, 482 F.3d at 1192. The two principal ways that reliability can be shown is by "[e]stablishing that an expert's proffered testimony grows out of pre-litigation research or that the expert's research has been subjected to peer review." *Daubert II*, 43 F.3d at 1318. "Where such evidence is unavailable, the proponent of expert scientific testimony may attempt to satisfy its burden through the testimony of its own experts. For such a showing to be sufficient, the experts must explain precisely how they went about reaching their conclusions **and point to some objective source** – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Id.* at 1318-19 (emphasis added).[33] The requirement that the expert point to some objective source to verify the reliability of the expert's methodologies reflects the principle that "[n]othing in either *Daubert* or the Federal Rules of Evidence requires the district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

In *Daubert II*, the Ninth Circuit excluded the plaintiffs' expert testimony where the plaintiffs "rel[ied] entirely on the experts' unadorned assertions that the methodology they employed comports with standard scientific procedures," offered "only the trial and deposition testimony of [the] experts" to support the assertion of reliability, and failed to "point to any external source to validate that methodology." *Id.* at 1319. "We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert,* that's not enough." *Id.*

---

[33] *See also Carnegie Mellon Univ. v. Three Rivers Biologicals, Inc.*, 55 F. Supp. 2d 1024, 1034 (N.D. Cal. 1999) ("**The Ninth Circuit has repeatedly stated** that where evidence of pre-litigation research or peer review is not available, the experts must (1) 'explain precisely how they went about reaching their conclusions' and (2) 'point to some objective source . . . to show that they have followed the scientific method as it is practiced by (at least) a recognized minority of the scientists in their field.'") (*citing Daubert II*) (emphasis added).

**Atmel's Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

10

### 1. Dr. McWilliams Has Not Offered Objective Evidence That His Three Experiments Utilize Reliable Methodologies.

Dr. McWilliams is a paid expert and his three methods have not been subjected to peer review.[34] In order to prove the reliability of his experiments, he accordingly must point "to some objective source . . . to show that [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." *Daubert II*, 43 F.3d at 1318-19. But rather than referencing any method considered reliable in his field, Dr. McWilliams devised three test methods on his own.[35] Dr. McWilliams failed to identify any instances where he had "ever seen these types of methods performed" and also could not identify an engineering standard for testing contact sensitivity.[36]

Even if some objective indicia of reliability were available, Dr. McWilliams' methodology itself suggests that it is not reliable. Dr. McWilliams testified that he focused only on "modes of operation that clearly showed [the sensors] did not require contact to operate."[37] For example, Dr. McWilliams did not determine if unmodified AuthenTec sensors were contact sensitive during normal use as in ¶ 6 of his Declaration, which would have shown that the sensors are indeed contact sensitive if AuthenTec's own documents are to be believed. Thus, Dr. McWilliams' methodology departs from scientific standards. *Carnegie Mellon Univ. v. Three Rivers Biologicals, Inc.*, 55 F. Supp. 2d 1024, 1034 (N.D. Cal. 1999) (stating that examining only subsets that do not disprove one's theory departs from scientific standards).

The extreme brevity and lack of detail in Dr. McWilliams' laboratory notes are also indicative of unreliable methodologies. Dr. McWilliams testified that he performed 10 swipes at each of the four shim heights in method 1, 10 swipes in method 2, and more than 10 swipes in method 3.[38] None of his notes, however, record results for the individual swipes.[39] Dr.

---

[34] **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 9:6-14.

[35] *Id.* at 151:13-23.

[36] *Id.* at 151:24-152:13.

[37] *Id.* at 160:24-161:23.

[38] *Id.* at 156:5-7; 157:1-4; 158:20-25.

Atmel's Motion to Strike the Declaration
of Dr. Roger D. McWilliams
C 06-02138 CW (EDL); C 07-03331

11

McWilliams' notes also fail to record his performance of method 2 other than a description of a related method where half of the fingerprint was covered with a dielectric layer rather than the entire fingerprint as in the method.[40]

### 2. Dr. McWilliams Has Not Offered Objective Evidence That The Arbitrary Exclusion Of The Drive Ring From The Sensors Is A Reliable Methodology.

Exclusion of the drive ring from the sensor is also unsupported by reference to an objective source demonstrating it as a reliable methodology. Dr. McWilliams alleges that "in the science view" the source of RF fields is separate from the detector of those fields.[41] Dr. McWilliams thus reasons that the RF source in the AuthenTec sensors (*i.e.*, the drive ring) is **external** to the sensor.[42] AuthenTec has offered no proof that excluding the RF source from the definition of "sensor" when the source and detector are integrated into a single sensing device is held by at least a recognized minority of scientists in his field, other than Dr. McWilliams' *ipse dixit*.[43] "Under *Daubert,* that's not enough." *Daubert II*, 43 F.3d at 1319.

## IV. CONCLUSION

Based upon the foregoing, Atmel respectfully requests that the Court STRIKE the Declaration of Dr. Roger D. McWilliams.

Respectfully Submitted,

DATED:  March 21, 2008     By:  *s/ Olivia M. Kim*
                                                    Edward G. Poplawski
                                                    Denise L. McKenzie
                                                    Olivia M. Kim
                                                    SIDLEY AUSTIN LLP

---

[39] **Ex. OO**.

[40] **Ex. OO** at RDW 00011 (see bottom half of page starting at "dielectric shims").

[41] **Ex. NN**, 3/13/08 McWilliams Dep. Tr. at 78:22-79:10.

[42] *Id.* at 78:22-80:5.

[43] *Id.* at 79:17-24.

**Atmel's Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

12

1  
2  
3  

555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

4  
5  

Attorneys for Plaintiffs, Atmel Corporation;
Atmel Switzerland; Atmel France; and Atmel SARL

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28