1

2

3

4

5

6

7

8

9                       IN THE UNITED STATES DISTRICT COURT

10                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   ATMEL CORPORATION, a Delaware
     corporation; ATMEL SWITZERLAND, a
12   corporation; ATMEL FRANCE, a                    No. C 06-2138 CW
     corporation; ATMEL SARL, a                          C 07-3331 CW
13   corporation,
                                                    ORDER ON CLAIM
14            Plaintiffs,                            CONSTRUCTION AND
                                                    CROSS-MOTIONS FOR
15        v.                                         SUMMARY JUDGMENT

16   AUTHENTEC, INC., a Delaware
     corporation,
17
              Defendant.
18   _____/

19

20        Plaintiffs Atmel Corporation, Atmel Switzerland, Atmel France

21   and Atmel SARL and Defendant Authentec, Inc. dispute the meaning of

22   several terms and phrases used in U.S. Patent No. 6,289,114 (the

23   '114 patent) and U.S. Patent No. 6,459,804 (the '804 patent).

24   Plaintiffs and Defendant each ask the Court to adopt their proposed

25   construction of the disputed terms and phrases.  In addition,

26   Plaintiffs move for partial summary judgment.  Defendant opposes

27   the motion, cross-moves for summary judgment and moves for an

28   exceptional case finding.  Plaintiffs oppose those motions.  The

**United States District Court**
For the Northern District of California

1  motions were heard on May 1, 2008.  The Court has considered the

2  parties' papers and oral argument.  The Court finds it unnecessary

3  to construe the disputed claim terms.  Construing the claims as

4  Plaintiffs propose for the purpose of the motions, the Court denies

5  Plaintiffs' motion for partial summary judgment, grants Defendant's

6  motion for summary judgment and denies Defendant's motion for an

7  exceptional case finding.

8                              BACKGROUND

9      Plaintiffs and Defendant are competitors that produce

10 biometric fingerprint sensors used to secure small electronic

11 devices.  Plaintiffs argue that they invented semiconductor slide

12 sensors, which greatly reduce the size of the sensor surface

13 because such slide sensors can recreate the image of a fingerprint

14 by reassembling several smaller images or "slices" captured as the

15 finger slides over the sensor or the sensor slides over the finger.

16 Plaintiffs contend that, prior to their invention, fingerprint

17 sensors, including Defendant's, read an entire fingerprint that was

18 placed directly on the sensor surface (area sensors).  Because the

19 sensor surface on an area sensor needs to be large enough to

20 accommodate an entire fingertip at once, such sensors are less

21 practical than slide sensors for small electronic devices such as

22 cell phones and PDAs.  Plaintiffs allege that these inventions are

23 protected by the '114 and '804 patents, which claim a fingerprint-

24 reading system that

25      includes a fingerprint sensor having an active surface
        sensitive to the pressure and temperature of a finger.
26      The surface area of this sensor is far smaller than
        the surface area of the fingerprint to be read.  The
27      reading is done when the sensor and the finger are in

28                                  2

United States District Court
For the Northern District of California

> contact and in a relative motion of sliding of the
> sensor and the finger with respect to each other.  The
> system reconstitutes a complete image of the
> fingerprint from the partial images given by the
> sensor during this motion.

'114 and '804 patents Abstract.[1]  The patents-in-suit propose a

sensor that "delivers only partial images of the complete

fingerprint" and provides that the "reconstruction of the complete

image of the fingerprints is obtained by the superimposition of

successive images given by the sensor during its relative shift

with respect to the finger."  '114 patent, col. 3, ln. 31-35.  The

patents disclose improvements over the prior art using optical

devices which were faulty because they could be tricked with a

photograph or model of a finger and because of their size and high

production costs.  Id. at col. 1, ln. 27-42.

    The patents also disclose improvements over prior art using

capacitive, piezoelectric and pyroelectric sensors.[2]  These sensors

only work with a live finger but also have a variety of drawbacks.

For example, the surface area of the sensor still has to be the

size of the fingerprint to be read.  Because these have to be so

large and are integrated directly into the very costly

semiconductor substrate, the cost of production is high.  Id. at

col. 2, ln. 20-22.  Moreover, the signal created by these sensors

---

[1]Because the '804 patent is a continuation claiming a method of using the apparatus claimed in the '114 patent, the text of the two is identical except for the claims.  However, the pagination and line numbers vary minimally.  All citations to text in the patents, except for the claims, will be to the '114 patent.

[2]Capacitive sensors measure electrical charge; piezoelectric sensors measure pressure; and pyroelectric sensors measure temperature.

3

**United States District Court**
For the Northern District of California

1   only exists for as long as the finger is in contact with the

2   surface.  Because there are variations of physical effects such as

3   the pressure being applied on the sensor, the sensor is constantly

4   producing images and requires the recognition system "to analyze

5   all the images . . . in order to find the one most appropriate for

6   authentication."  <u>Id.</u> at col. 2, ln. 37-40.  Other systems using

7   "excitation external to the sensor" such as "the sending of an

8   energy beam in the form of microwaves" had been found to

9   "complicate the system and increase its volume and cost."  <u>Id.</u> at

10  col. 2, ln. 42-44.

11      The invention disclosed in the patents-in-suit seeks to

12  overcome these drawbacks.  First, because the sensor and the finger

13  slide relative to one another, the sensor need not be as large as

14  the fingerprint to be read.  Second, because the finger moves

15  across the sensor "successively with a speed that is in the same

16  ranges as or faster than the time constant characteristic of the

17  sensitive layer of the sensor," the sensor "provides a sequence of

18  images with a constant quality of contrast."  <u>Id.</u> at col. 3, ln. 3-

19  7.  Further, "inasmuch as the relative speed of shift of the finger

20  with respect to the sensor does not exceed a certain maximum value,

21  an image given by the sensor at a given instant will at least

22  partially overlap the following one."  <u>Id.</u> at col. 3, ln. 18-21.

23  Therefore, the "complete image of the fingerprint could be

24  reconstituted by a specific processing system."  <u>Id.</u> at col. 3, ln.

25  21-23.  The '114 patent contains apparatus claims and the '804

26  patent claims a method of using the apparatus claimed in the '114

27  patent.

28                                      4

**United States District Court**
For the Northern District of California

1  Plaintiffs argue that several of Defendant's EntrePad sensors

2  (AES products) infringe claims 1, 2, 4, 7-10, 12, 14 and 17-19 of

3  the '114 patent and claims 1, 5, 6, 10, 11, 15 and 16 of the '804

4  patent.  Defendant's AES products utilize radio-frequency sensing

5  technology to "read" the fingerprint patterns on the live layer of

6  skin beneath the finger's dry outer surface layer.  The AES product

7  works when a person presses her finger against the drive ring,

8  which injects a small radio-frequency signal into the finger.  The

9  radio frequency is then read by the detection matrix, which

10 "sense[s] the strength of the electric field which is established

11 by the boundary condition of the ridge valley pattern inside itself

12 and the actual metal layers inside the . . . over-all package."

13 McKenzie Decl., Ex. K at 230.

14                          DISCUSSION

15 I.  Claim Construction

16  In their joint claim construction statement, the parties

17 identified thirty-one terms for construction.  They agree on the

18 construction for three of those terms and submit the remainder to

19 the Court.  Ordinarily, the Court must first construe the claims of

20 the patent before considering questions of infringement.  See

21 SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1339-40

22 (Fed. Cir. 2005).  However, as Defendant argues, even if the Court

23 adopts Plaintiffs' proposed constructions in full, Defendant's

24 products do not infringe the patents-in-suit.  Therefore, for

25 purposes of deciding Defendant's motion for summary judgment, the

26 Court adopts Plaintiffs' proposed claim construction.  Further, for

27 purposes of deciding Defendant's motion, the Court need rely on

28                              5

**United States District Court**
For the Northern District of California

1  only four terms, the same four that Plaintiffs identify as the

2  "most important": "sensor," "sensing surface," "sensing elements"

3  and "contact sensitive elements."  These terms all appear in Claim

4  1 of the '114 patent.

5      Claim 1 of the '114 patent provides, "A fingerprint reading

6  system comprising: means for reading a fingerprint including a

7  sensor having a sensing surface coupled to a matrix of contact

8  sensitive elements for generating a series of partial images of a

9  finger, placed in direct contact with said sensing surface, from

10 relative sliding contact between said sensing surface and said

11 finger, said sensing surface having a surface area smaller than a

12 surface area of said fingerprint to be read; and means for

13 reconstituting a total image of the fingerprint from said partial

14 images."

15     According to Plaintiffs, a "sensor" is "Any device that can

16 detect or measure something," and a "sensing surface" is "A surface

17 of the sensor that detects finger contact wherein the sensor is

18 integrated onto a semiconductor substrate and is not an optical

19 sensor."  The "sensing elements" are "Two or more component parts

20 that are responsive to contact between a finger and the sensing

21 surface of the sensor wherein the sensor is integrated onto a

22 semiconductor substrate and is not an optical sensor."  Finally,

23 "contact sensitive elements" are "Two or more component parts that

24 are responsive to contact between a finger and the sensing surface

25 of the sensor wherein the sensor is integrated onto a semiconductor

26 substrate and is not an optical sensor."

27

28                                  6

**United States District Court**
For the Northern District of California

1  II.  Summary Judgment

2       Summary judgment is properly granted when no genuine and

3  disputed issues of material fact remain, and when, viewing the

4  evidence most favorably to the non-moving party, the movant is

5  clearly entitled to prevail as a matter of law.  Fed. R. Civ.

6  P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

7  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

8  1987).

9       The moving party bears the burden of showing that there is no

10 material factual dispute.  Therefore, the court must regard as true

11 the opposing party's evidence, if supported by affidavits or other

12 evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815

13 F.2d at 1289.  The court must draw all reasonable inferences in

14 favor of the party against whom summary judgment is sought.

15 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

16 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

17 1551, 1558 (9th Cir. 1991).

18      Material facts which would preclude entry of summary judgment

19 are those which, under applicable substantive law, may affect the

20 outcome of the case.  The substantive law will identify which facts

21 are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

22 (1986).

23      Where the moving party does not bear the burden of proof on an

24 issue at trial, the moving party may discharge its burden of

25 production by either of two methods.  Nissan Fire & Marine Ins.

26 Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.

27 2000).

28
                                    7

**United States District Court**
For the Northern District of California

1
2
3

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

4  Id.

5
6
7
8
9
10
11
12
13
14
15
16

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

17
18
19
20
21
22

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

23
24
25
26
27

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate

28

**United States District Court**
For the Northern District of California

1  burden of persuasion at trial.  <u>Id.</u> at 1107.

2      Where the moving party bears the burden of proof on an issue

3  at trial, it must, in order to discharge its burden of showing that

4  no genuine issue of material fact remains, make a <u>prima facie</u>

5  showing in support of its position on that issue.  <u>UA Local 343 v.</u>

6  <u>Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994).  That

7  is, the moving party must present evidence that, if uncontroverted

8  at trial, would entitle it to prevail on that issue.  <u>Id.</u>; <u>see also</u>

9  <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th

10 Cir. 1991).  Once it has done so, the non-moving party must set

11 forth specific facts controverting the moving party's <u>prima facie</u>

12 case.  <u>UA Local 343</u>, 48 F.3d at 1471.  The non-moving party's

13 "burden of contradicting [the moving party's] evidence is not

14 negligible."  <u>Id.</u>  This standard does not change merely because

15 resolution of the relevant issue is "highly fact specific."  <u>Id.</u>

16      A.   Defendant's Motion for Summary Judgment

17      Defendant argues that, even using Plaintiffs' construction of

18 the relevant terms, the accused products do not infringe the

19 patents-in-suit because the products do not require "direct

20 contact" between the user's finger and the "sensing surface" as

21 provided for in claims 1 and 17 of the '414 patent.  Rather,

22 Defendant argues, its products require the user to contact the

23 drive ring, which injects a radio-frequency signal into the finger,

24 thereby creating an electric field captured by the detection matrix

25 and used to image the fingerprint.

26      Plaintiffs do not dispute this description of Defendant's

27 products.  <u>See</u> Plaintiffs' Responsive Brief at 10.  Instead,

28                                      9

**United States District Court**
For the Northern District of California

1  Plaintiffs contend that the "sensing surface" includes both the

2  detection matrix and the drive ring.  Plaintiffs argue that,

3  because an individual must make contact with the drive ring to use

4  the sensor, Defendant's products require "direct contact" between

5  the user's finger and the "sensing surface."  However, as described

6  above, Plaintiffs' own construction of "sensing surface" is "A

7  surface of the sensor that detects finger contact wherein the

8  sensor is integrated onto a semiconductor substrate and is not an

9  optical sensor."

10      Plaintiffs contend that the drive ring "detects finger

11  contact" and is therefore part of the sensing surface.  However,

12  this argument is based on Plaintiffs' assertion that Defendant's

13  "sensor specifications indicate that the sensor captures images

14  once a 'finger has been detected on the sensor.'"  Plaintiffs'

15  Responsive Brief at 10 (quoting Product Specification for the

16  AES4000 Fingerprint Sensor).  As Defendant points out, the quoted

17  specification is for a product that is not accused of infringing,

18  a product in which the drive ring is used as a power-up mechanism.

19  This power-up feature is not included in the accused products.

20  Moreover, as Defendant points out, Plaintiffs' infringement

21  contentions include only the detection matrix as the part of the

22  accused products that comprises the "sensing surface coupled to a

23  matrix of several lines of sensing elements" identified in claim 17

24  of the '114 patent.  <u>See</u> DeMory Reply Decl., Ex. 39.  Plaintiffs'

25  infringement contentions do not mention the drive ring.  <u>See</u> <u>id.</u>

26      Further, the "undisputed material facts" (UMFs) Plaintiffs

27  include in their opening brief make clear that the drive ring is

28                                      10

United States District Court
For the Northern District of California

1  not part of their own construction of "sensing surface."  UMF I

2  states, "The sensor device in the AES products includes both the

3  detection matrix and the drive ring."  Plaintiffs' opening brief at

4  23.   However, UMF E states, "The AES products have a sensor that

5  detects" and goes on to cite the specifications for the AES

6  products' detection matrices.  Id. at 22.   The fact that a "sensor

7  device" includes the drive ring does not necessarily mean that the

8  "sensing surface" includes the drive ring.  Moreover, as Defendant

9  points out, the drive ring transmits a signal into the finger; it

10  does not detect any part of, or signal from, the finger.

11        The Court finds that the drive ring is not part of the

12  "sensing surface."  Therefore Defendant's accused products do not

13  infringe independent claim 1 of the '114 patent, which requires

14  that the user's finger be "placed in direct contact with [the]

15  sensing surface."  Because Defendant's products do not infringe

16  independent claim 1, they also do not infringe claims 2, 4, 7, 8,

17  9, 10, 12, or 14, which depend on claim 1.  Independent claim 17 of

18  the '114 patent also requires "a finger placed in contact with

19  [the] sensing surface."  Therefore, the accused products do not

20  infringe independent claim 17 or dependent claims 18 and 19 of the

21  '114 patent.

22        Moreover, Defendant asserts and Plaintiffs do not dispute that

23  the "'804 patent claims only a method of using an apparatus claimed

24  in the '114 patent."  Defendant's opening brief at 4.  Because

25  Defendant's products do not infringe the apparatus claimed in the

26  '114 patent, they cannot infringe the method of using that

27  apparatus claimed in the '804 patent.

28                                11

**United States District Court**
For the Northern District of California

1  III.  Exceptional Case Finding

2      Defendant argues that it should be awarded reasonable

3  attorneys' fees under 35 U.S.C. § 285, which provides that in

4  exceptional patent cases courts "may award reasonable attorney fees

5  to the prevailing party."  In Cambridge Products, Ltd. v. Penn

6  Nutrients, Inc., 962 F.2d 1048, 1050-51 (Fed. Cir. 1992), the court

7  found that the exceptional nature of the case must be established

8  by clear and convincing evidence, explaining that "exceptional

9  cases" are normally those involving bad faith litigation or fraud

10  or inequitable conduct by the patentee in procuring the patent.

11      Defendant contends that Plaintiffs engaged in misconduct

12  during litigation.  In particular, Defendant contends that

13  Plaintiffs purposefully misrepresented the licensing history of the

14  patents-in-suit in their papers filed in opposition to Defendant's

15  motion to dismiss.  Further, Defendant argues that, despite two

16  court orders to do so, Plaintiffs have wrongfully refused to

17  respond to written discovery and deposition questions regarding the

18  licenses.  Because Magistrate Judge Laporte is more familiar with

19  the parties' conduct during discovery, the Court finds that she is

20  better equipped to evaluate Defendant's allegations of misconduct.

21  These allegations are the subject of Defendant's motion for

22  sanctions currently under submission before Magistrate Judge

23  Laporte.

24      Defendant also argues that the merits of the case warrant an

25  exceptional case finding.  Even absent a finding of misconduct, a

26  prevailing party may be granted attorneys' fees if "(1) the

27  litigation is brought in subjective bad faith, and (2) the

28                              12

1  litigation is objectively baseless." <u>Brooks Furniture Mfg. v.</u>

2  <u>Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

3  Defendant argues that it is entitled to attorneys' fees because,

4  even accepting Plaintiffs' proposed claim construction, the accused

5  products do not infringe the patents-in-suit.  Therefore, Defendant

6  contends that the litigation is objectively baseless.  Plaintiffs

7  counter that they hired outside counsel to conduct an investigation

8  prior to filing this lawsuit.  Although the deposition testimony

9  Plaintiffs file in support of their argument that they conducted a

10  reasonable investigation is notably vague, Defendant bears the

11  burden of establishing that Plaintiffs acted in subjective bad

12  faith.  The only evidence Defendant cites in support of this

13  finding is an email by the inventor discussing the likelihood of

14  proving that other products not at issue in this case infringe the

15  patents-in-suit.  This is not clear and convincing evidence that

16  Plaintiffs brought this suit in bad faith.

17                          CONCLUSION

18      For the foregoing reasons, the Court accepts Plaintiffs'

19  construction of the relevant terms for purposes of deciding

20  Defendant's motion for summary judgment.  The Court DENIES

21  Plaintiffs' motion for partial summary judgment (Docket No. 398),

22  GRANTS Defendant's motion for summary judgment and DENIES its

23  motion for an exceptional case finding (Docket No. 430).[3]  Once the

24  motions pending before the Magistrate Judge have been resolved, the

25

26      [3]Plaintiffs' motion to strike the McWilliams declaration
    (Docket No. 462) is DENIED as moot.  The Court did not consider the
27  declaration in deciding these motions.

28                              13

1   Clerk shall enter judgment for Defendant and close the file.

2   Defendant shall recover its costs from Plaintiffs jointly and

3   severally.

4        IT IS SO ORDERED.

5

6   Dated: 5/5/08

CLAUDIA WILKEN
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

14